CHARLES S. BALES *et al.*

*v.*

HARRIET ELDER *et al.*

*Filed at Springfield March 23, 1887.*

1. DESCENTS—*by what law governed.* The laws of descents in force at the time of a person's death, will control in the distribution of his estate.

2. SAME—*as to illegitimate persons—from whom they may inherit.* Under the legislation of 1845 and 1853, relating to the descent of property, etc., an illegitimate person is recognized as the child of its mother, as regards the descent of property, and is made capable of inheriting her property to the exclusion of all persons, when she died unmarried; and he was enabled to transmit, by descent, his own property to her and her children.

3. The act of 1872, relating to descents, confers upon illegitimates and their lawful issue, as respects the mother and any maternal ancestor, and any person from whom the mother might have inherited, if living, inheritable blood, and, as such, in the respects mentioned, they have the right of inheritance as fully as legitimate children.

4. The object of the framers of such act seems to have been to remove the common law disability of inheritance by illegitimates, through the maternal line, and in that regard place such persons upon the same footing as legitimate persons.

5. SAME—*the particular case.* The mother of an illegitimate son, married, and there was issue of the marriage. The illegitimate son died, leaving children who were born in lawful wedlock. The mother also died, leaving her surviving several children, the issue of her marriage, one of whom, a son, afterwards died, intestate, leaving no widow, no child or descendants of a child, nor parents, but leaving surviving him one sister, and the descendants of other sisters. Had the mother been living at the time of the death of this son, she would have inherited a portion of his estate, and because the mother would, if living, have inherited from him, her illegitimate son, had he survived, would have been one of his heirs, and so, the children of such illegitimate, born in lawful wedlock, representing their father, became invested with the same heirship.

6. This results under the act of 1872, notwithstanding the illegitimate son and his mother both died before that act took effect.

APPEAL from the Circuit Court of Sangamon county; the Hon. JESSE J. PHILLIPS, Judge, presiding.

Messrs. PATTON & HAMILTON, for the appellants:

The presumption is in favor of legitimacy. Wharton on Evidence, sec. 1298; *Sullivan* v. *Kelly*, 3 Allen, 148; *Canjolle* v. *Ferre*, 26 Barb. 177; *Morris* v. *Davis*, 5 Cl. & Fin. 163; *Land Co.* v. *Bonner*, 75 Ill. 315; *Whitman* v. *State*, 34 Ind. 360.

As having some bearing on our Statute of Descents, we refer to *Alexander* v. *Alexander*, 31 Ala. 241; *Opdyke's Appeal*, 49 Pa. St. 373; *Neil's Appeal*, 92 id. 193; *Meguire* v. *Brown*, 41 Iowa, 650; Reeve on Descents, 96; 4 Ired. 480.

Messrs. TIPTON & BEAVER, for the appellees:

Assuming that Hampton D. Bales was the illegitimate son of Sarah Walker, and that Hiram Walker and his sisters were the legitimate children of Sarah Walker, the mother of Hampton D. Bales, for the purpose of inheritance, in law, they were not half brothers, or of the half blood. *Woodward* v. *Duncan*, 1 Coldw. 562; *Stevenson's Heirs* v. *Sullivant*, 5 Wheat. 207; *Bacon* v. *McBride*, 32 Vt. 585.

By the common law, a bastard, being *nullius fillius*, had no inheritable blood, and was incapable of inheriting as heir either of his father or his mother, or to any one else, nor could he have heirs of his own body; and, consequently, for the purpose of inheritance, he could, in law, have no half brothers, nor inherit from the legitimate children of the same mother. Blackstone's Com. 459; 2 Kent's Com. 212, 213; *Brown* v. *Kirby*, 9 Humph. 463; *Woodward* v. *Duncan*, 1 Coldw. 562; *Stoltz* v. *Doering*, 112 Ill. 234; *Blacklaws* v. *Milne*, 82 id. 505.

The mother having died before her son, her illegitimate son, or his heirs, could take nothing. *Waltemote's Appeal*, 86 Pa. St. 220; *Pico's case*, 52 Cal. 86; *Allen* v. *Ramsey's Heirs*, 1 Metc. 637; *Berry* v. *Owen's Heirs*, 5 Bush, 452; *Jackson* v. *Jackson*, 78 Ky. 390; *Remington* v. *Lewis*, 8 B. Mon. 606.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by appellants, who are children of Hampton D. Bales, deceased, to partition certain real estate of which Hiram Walker died seized on the 29th day of April, 1885. The complainants were sons and daughters of Hampton D. Bales, who was a son of Sarah Walker, and she was the mother of Hiram Walker. The clear preponderance of the evidence shows that Hampton D. Bales was an illegitimate son of Sarah Walker, born out of lawful wedlock, before she was married. In the consideration of the case that fact will be regarded as established by the evidence. Hiram Walker died intestate, leaving no child or descendants of a child, nor parents, but he left surviving him one sister, and the descendants of four other sisters. His mother's maiden name was Sarah Bales, who married Daniel Walker. Sarah Walker, the mother, died in 1854, and the father died in 1840. Hampton Bales, the illegitimate son, died in 1852.

Whether appellants, who were children of Hampton D. Bales, are entitled to inherit a portion of the estate of Hiram Walker, deceased, involves a construction of our Statute of Descents, enacted in 1872. At the common law, which is in force in this State, except so far as it has been changed by the statute, a bastard could not inherit. Blackstone (vol. 1, page 459,) says: "The incapacity of a bastard consists principally in this, that he can not be heir to any one, neither can he have heirs but of his own body, for, being *nullius fillius,* he is therefore of kin to nobody, and has no ancestor from whom any inheritable blood can be derived." Kent (vol. 2, page 211,) says: "A bastard, being in the eyes of the law *nullius fillius,* * * * has no inheritable blood, and is incapable of inheriting as heir, either to his putative father, or his mother, or to any one else. Nor can he have heirs but of his own body." The common law, excluding a bastard from inheritance from any person, remained the law of this State until section 53, chapter 109, entitled "Wills," of the Revised Statutes

of 1845, was enacted, which provided that a bastard might inherit the estate of a mother, where she died unmarried, leaving an estate. In 1853 the legislature passed another act, which provides that when a bastard or illegitimate person dies intestate, the property of such person shall descend to the widow, or surviving husband, and children, in a certain specified manner. The act also provided that the property of an illegitimate, dying intestate, should not escheat to the State, except in default of heirs, as in the act provided. In speaking in regard to these statutes, in *Miller* v. *Williams*, 66 Ill. 93, we said: "Under these statutes, an illegitimate person is recognized as the child of its mother, as regards the descent of property, and made capable of inheriting her property to the exclusion of all persons, where she was unmarried; and he is enabled to transmit, by descent, his own property to her and her children." In 1857 another act was passed in regard to the property of an illegitimate, but it did not enlarge his right of inheritance, and has no bearing on the question involved in this case.

Thus, the law, as we have stated it, in relation to illegitimate persons, and their property and rights of inheritance, remained until 1872, when our Statute of Descents was revised by the legislature, and several radical changes were made in the law. Section 1 of the act, as originally passed, relates to estates of legitimate persons, while section 2 relates solely to illegitimate persons. (Laws of 1871-2, page 352.) Under this revision, for the first time in the history of our State legislation, the law of descents, both as to legitimate persons and illegitimate, was incorporated into one act. Under section 1 it is provided that estates of resident or non-resident proprietors, dying intestate, shall descend, first, to his or her children and their descendants, in equal parts, etc.; second, "When there is no child of the intestate, nor descendant of such child, and no widow or surviving husband, then to the parents, brothers and sisters of the deceased, and their de-

scendants, in equal parts among them, allowing to each of the parents, if living, a child's part, or to the survivor of them, if one be dead, a double portion. And if there is no parent living, then to the brothers and sisters of the intestate, and their descendants." Section 2 provides, that "an illegitimate child shall be heir of his mother and any maternal ancestor, and of any person from whom its mother might have inherited, if living; and the lawful issue of an illegitimate person shall represent such, and take, by descent, any estate which the parent would have taken if living."

This is the section of the statute under which appellants claim to inherit a portion of the estate of Hiram Walker, deceased. They are the lawful issue of Hampton D. Bales, who was an illegitimate son of Sarah Walker, the mother of Hiram Walker.

We are free to concede that it is somewhat difficult to determine, from the language used in section 2, what the real intention of the legislature was; but one thing is quite apparent, and that is, that the legislature did intend to still further remove the common law disabilities of illegitimate persons, and enlarge their rights to take property under our laws of descent. Indeed, since 1845 the tendency of the legislation in the State, from time to time, down to 1872, has been to remove the rigors of the common law in relation to illegitimate persons, and place them more nearly on a level with legitimates. The language of the act, "an illegitimate child shall be heir of his mother and any maternal ancestor, and of any person from whom its mother might have inherited if living," fixes the relative *status* of the illegitimate. It makes him an heir, and, as such, he is vested with all the rights, powers and privileges of a legitimate person who may be an heir standing in the same degree of relationship. An heir is one who, after his ancestor's death, has a right to inherit the intestate estate. An illegitimate, therefore, as heir of his mother, would be entitled to inherit from her, in case of her

death, in the same manner as her legitimate children. As heir of any maternal ancestor, and of any person from whom its mother might have inherited, if living, a like position is occupied. The statute, as we understand it, confers upon illegitimates and their lawful issue, as respects the mother and any maternal ancestor, and any person from whom the mother might have inherited, if living, inheritable blood, and as such they have the right of inheritance as fully as legitimate children. There is nothing in the statute that will allow an illegitimate to inherit from the father of such person, but the object of the framers of the statute seems to have been to remove the common law disability of inheritance through the maternal line, and, in that regard, place such persons upon the same footing as legitimate persons. We see no other construction that can be placed on the act, without disregarding the plain and emphatic language used in the statute, which the rules of construction will not allow. Had Sarah Walker been living at the time of the death of her son, Hiram Walker, under the second clause of section 1 she would have inherited a portion of his estate; but she was dead, and section 2 declares that her illegitimate son, Hampton D. Bales, shall be her heir, and not only her heir, but an heir of any person from whom she might have inherited, if living. This, if Hampton D. Bales had been living, would have made him one of the heirs of the estate of Hiram Walker, but as he was dead, the statute goes further, and provides that the lawful issue of an illegitimate person shall take, by descent, any estate which the parent would have taken, if living. This last clause confers upon appellants, children of Hampton D. Bales, the right to inherit a portion of the estate of Hiram Walker,—that portion which Bales might have inherited had he been living when Walker died.

It is claimed by appellees, that under the construction of the statute contended for by appellants, there will be a conflict between the second clause of section 1 and section 2.

We perceive no conflict between the two sections. Appellees take under the second clause of section 1, while appellants are entitled to take a portion of the same estate under section 2. Two classes of persons are provided for,—one under the one section, and the other under the other section. Where there are no persons to claim under section 2, as would ordinarily be the case where a man dies intestate, leaving no children, descendants of children, or widow, then the entire estate would pass and be distributed under section 1; but in case there were persons who were heirs under section 2, then the estate would descend and have to be distributed under both sections.

It is also claimed that appellants can not claim under the act of 1872, for the reason that Sarah Walker and Hampton D. Bales both died before the act of 1872 was passed. There is no provision of the act under which its application is limited and confined to a case where the mother and illegitimate may be living at the time the act took effect, as there probable would have been had the legislature intended so to limit it, and in the absence of such limitation we see no reason why the act may not as well apply where the mother and illegitimate may be dead, as living, when the act took effect. The act is one prescribing a rule of descent of property. All other acts relating to descents were repealed, leaving the act of 1872 as the only one under which real estate belonging to an intestate estate could descend. The appellants do not claim a part of this estate as heirs of Sarah Walker or Hampton D. Bales, but they claim as heirs of Hiram Walker; and as he died after the act of 1872 was adopted, his estate must descend and be distributed according to that act, as there is no other law of descent under which it can descend.

From what has been said, it follows that the judgment of the circuit court was erroneous, and it will be reversed, and the cause remanded. *Judgment reversed.*

Mr. JUSTICE SHOPE, dissenting.