LOUIS CHAMBERS *et al.* Appellees, *vs.* EDWARD CHAMBERS *et al.* Appellants.

*Opinion filed February 25, 1911.*

1. DESCENT—*purpose of provision of statute allowing bastards to inherit from mother.* The purpose of the provision of section 2 of the Statute of Descent that an illegitimate child be an heir of its mother and any maternal ancestor, "and of any person from whom its mother might have inherited, if living," was to place illegitimate children upon the same footing as legitimate children as respects the maternal line, but was not intended to give them greater rights than legitimate children would have.

2. SAME—*section 2 of Statute of Descent must be construed with section 1.* Section 2 of the Statute of Descent, in so far as it provides for the descent of property of bastards, is complete in itself, but so far as it removes from bastards the common law disability of inheritance it must be construed in connection with section 1, which governs the descent and distribution of property of legitimate persons who die intestate.

3. SAME—*an illegitimate child cannot inherit from its mother's nephews.* Where a legitimate person dies intestate, leaving as his only next of kin aunts and uncles and an illegitimate child of an aunt who died before the death of the intestate, the aunts and uncles take the property under clause 5 of section 1 of the Statute of Descent, and the illegitimate child, being one degree further removed from the intestate than the aunts and uncles, cannot take, notwithstanding the provision of section 2 that a bastard may be an heir of any person from whom its mother might have inherited.

APPEAL from the Circuit Court of Peoria county; the Hon. L. D. PUTERBAUGH, Judge, presiding.

CHARLES F. ROBISON, and GEORGE B. FOSTER, for appellants.

EDWARD D. McCABE, for appellee Louis Chambers; ELLWOOD & MEEK, for appellees Sophia Rowley and Frank Chambers; CHARLES S. STUBBLES, for appellee Elizabeth Decker.

Mr. JUSTICE COOKE delivered the opinion of the court:

On April 5, 1909, George R. Hale, then a resident of Peoria county, died intestate, leaving him surviving no child or descendant of any deceased child, no parent, brother or sister or descendant of any parent, brother or sister, and no widow, but did leave him surviving Louis Chambers, Edward Chambers, Frank Chambers, Jennie Ellis, Sophia Rowley and Elizabeth Decker, his uncles and aunts, William A. Newman, the illegitimate son of Carrie Chambers, deceased, who was an aunt of George R. Hale, and William A. Carver, the illegitimate son of Catherine Chambers, deceased, who was also an aunt of George R. Hale. On June 9, 1909, Louis Chambers filed his bill of complaint in the circuit court of Peoria county for the partition of the real estate owned by George R. Hale at the time of his death, among the uncles and aunts of the decedent, in equal parts. The defendants Jennie Ellis and Edward Chambers

answered the bill, denying that the uncles and aunts are the only heirs of George R. Hale and denying that they are all the tenants in common of the premises sought to be partitioned, and alleging that William A. Newman and William A. Carver are also heirs of George R. Hale, and that these illegitimate children and the uncles and aunts are tenants in common of the real estate, and that each is seized of and entitled to an undivided one-eighth part of said premises. Jennie Ellis also filed a cross-bill praying for partition of the real estate among the uncles and aunts and the illegitimate children of the deceased aunts of George R. Hale, making the complainant and the other defendants and William A. Carver and William A. Newman defendants thereto. After the issues had been made the cause was referred to the master to take the evidence and report the same to the court, with his conclusions of law and fact. The master found and reported that the uncles and aunts and William A. Newman and William A. Carver were heirs of George R. Hale, and that each was seized of an undivided one-eighth of the real estate sought to be partitioned, and recommended a decree in accordance with such finding. The complainant, Louis Chambers, and the defendants Sophia Rowley, Frank Chambers and Elizabeth Decker, filed exceptions to the master's report, which were sustained, and a decree was entered finding that William A. Newman and William A. Carver are not heirs of George R. Hale and have no interest in the real estate in controversy, finding the interests of the parties as set out in the original bill, and appointing commissioners to make partition of the premises in accordance with such finding. From that decree Jennie Ellis, Edward Chambers, William A. Newman and William A. Carver have prosecuted this appeal.

The only question presented for our determination is whether the appellants William A. Newman and William A. Carver are, under the statutes of this State, entitled to any portion of the estate left by George R. Hale. It is con-

ceded that they are illegitimate children of deceased aunts of George R. Hale and that their mothers predeceased him. It is also conceded that the uncles and aunts are the nearest relatives of the decedent.

The descent of property, both real and personal, is governed by chapter 39 of our Revised Statutes, being our Statute of Descent, and the persons entitled to the real estate of George R. Hale upon his death must be determined from the provisions of that act. The first section of the act relates to the descent of property of persons, other than bastards, dying intestate. The second section relates to the descent of property of bastards dying intestate. There is no contention here that George R. Hale was an illegitimate child, and as his nearest relatives were uncles and aunts, the descent of his property is controlled by the fifth clause of section 1 of the act, which is as follows: "If there is no child of the intestate or descendant of such child, and no parent, brother or sister or descendant of such parent, brother or sister, and no widow or surviving husband, then such estate shall descend in equal parts to the next of kin to the intestate in equal degree, (computing by the rules of the civil law,) and there shall be no representation among collaterals, except with the descendants of brothers and sisters of the intestate; and in no case shall there be any distinction between the kindred of the whole and the half blood." If William A. Newman and William A. Carver had been legitimate children of their mothers it would necessarily follow from the provisions of said fifth clause that they could not inherit any portion of the property left by George R. Hale, because, computing by the rules of the civil law, they were related to the decedent in the fourth degree while the uncles and aunts were related to him in the third degree, and were therefore the next of kin and entitled to all his estate, to the entire exclusion of the children or descendants of deceased collateral kindred related to the decedent in the third degree.

2 4 9 — 9

Appellants contend, however, that section 1 only relates to the descent of property to legitimate persons, and that whether a bastard is an heir of the intestate must be determined, not from the provisions of section 1, but from the following provision of section 2 of the act: "An illegitimate child shall be heir of its mother and any maternal ancestor, and of any person from whom its mother might have inherited, if living," and that as the mothers of William A. Newman and William A. Carver, if living, would each have inherited one-eighth of the property left by George R. Hale, their illegitimate children are, by virtue of said provision of section 2, heirs of George R. Hale and inherit from him the same portions of his property that their mothers would have inherited if living. In *Bales* v. *Elder,* 118 Ill. 436, we said that it is somewhat difficult to determine, from the language used in section 2, what the real intention of the legislature was, but we deduced the conclusion from the language of the provision, considered in connection with the history of legislation upon the subject in this State, that it was the purpose of the legislature, in enacting that section, to remove the common law disability of inheritance through the maternal line, and in that regard place illegitimate persons upon the same footing as legitimate persons. The decision in that case was followed in *Jenkins* v. *Drane,* 121 Ill. 217, where we said, referring to the case of *Bales* v. *Elder, supra:* "We there held that the statute confers upon illegitimates and their lawful issue, as respects the mother and any maternal ancestor and any person from whom the mother might have inherited if living, inheritable blood, and that, as such, they have the right of inheritance as fully as legitimate children."

Keeping in view the purpose of the legislature in enacting the provision of section 2 of the act above quoted, as determined in the cases above cited, the expression in the statute that "an illegitimate child shall be heir * * * of any person from whom its mother might have inherited, if

living," can mean no more than that the common law disability which prevented an illegitimate child from tracing inheritable blood through its mother is removed, and to that extent the illegitimate child "is vested with all the rights, powers and privileges of a legitimate person who may be an heir standing in the same degree of relationship." Section 1 of the act regulates the course of descent and the distribution of property of persons, not bastards, dying intestate. Section 2 regulates the course of descent and the distribution of property of bastards dying intestate, and also removes certain disabilities of inheritance imposed by the common law upon bastards. So far as section 2 regulates the course of descent and the distribution of property of bastards dying intestate it is complete, in itself, as a statute of descent, but so far as it removes certain disabilities of inheritance imposed by the common law upon bastards it is not complete, in itself, as a statute of descent, but must be read in connection with section 1 in order to determine whether the law has cast upon a bastard the title to all or any portion of the property left by an intestate not a bastard. Section 2 conferred upon William A. Newman and William A. Carver the capacity to inherit property from George R. Hale, and in this respect placed them in the same position that they would have occupied had they been legitimate children of their mothers, but section 1 designated what class of persons should succeed to the property left by George R. Hale, and Newman and Carver did not belong to that class. It therefore follows that they have no interest in the real estate in controversy and that there is no error in the decree from which this appeal was taken.

The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*