---

(No. 12671.—Reversed and remanded.)
HARRY B. MORROW *et al.* Plaintiffs in Error, *vs.* SARAH A. MORROW *et al.* Defendants in Error.

*Opinion filed June 18, 1919—Rehearing denied October 10, 1919.*

1. DESCENT—*rights of inheritance of illegitimates depend solely on section 2 of Statute of Descent.* Under the common law illegitimates had no inheritable blood, and their rights of inheritance and the rights of their descendants through them are in Illinois determined solely by section 2 of the Statute of Descent.

2. SAME—*section 2 of Statute of Descent gives illegitimates inheritable blood at birth and not after mother's death.* The words "if living," in section 2 of the Statute of Descent, do not imply that the mother must be dead before an illegitimate child has inheritable blood, but the statute removes entirely the bar against illegitimates inheriting through the maternal line and gives the child inheritable blood through the mother when the child is born.

3. SAME—*mother and her legitimate children cannot inherit to the exclusion of her illegitimate children.* Where a legitimate child dies leaving no husband or child or descendant of any deceased child, the mother and the full brothers of the deceased cannot inherit its property to the exclusion of an illegitimate son and the children of an illegitimate daughter of the deceased's mother.

WRIT OF ERROR to the Circuit Court of Ford county; the Hon. T. M. HARRIS, Judge, presiding.

PHILLIPS & MIDDLETON, for plaintiff in error Harry B. Morrow.

A. L. PHILLIPS, guardian *ad litem,* for infant plaintiffs in error.

CLOUD & THOMPSON, for defendants in error Russell A. Campbell and William E. Morrow.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This writ of error is sued out to reverse a decree of the circuit court of Ford county sustaining a demurrer interposed by Russell A. Campbell, one of the defendants in error, and dismissing the bill for partition filed by Harry B. Morrow, one of the plaintiffs in error, for want of equity. The bill alleges, among other things, that Ollie B. Campbell died seized in fee simple of an undivided three-fourths interest in certain real estate, described as lots 1 and 2 and the east half of lot 3, in block "D," in Pell's addition to the city of Paxton, Ford county, Illinois, the other undivided one-fourth interest being in Russell A. Campbell, one of the defendants in error; that Ollie B. Campbell departed this life intestate on October 28, 1917, leaving no husband her surviving but leaving her surviving the following named persons: Sarah A. Morrow, her mother; Eugene L. Morrow and William E. Morrow, her brothers; Harry B. Morrow, her half-brother, being a child of Sarah A. Morrow born out of lawful wedlock; Clarence Olson and Glenn Olson, her nephews; and Merle L. Singleton, a niece, the last three named being children of her half-sister, Gertie Olson, deceased, said Gertie Olson being also a daughter of Sarah A. Morrow born out of lawful wedlock. The bill further alleges that Ollie B. Campbell's estate is in course of administration in the county court of Ford county and that S. Ludlow is administrator of said estate. The bill then sets forth the respective interests of each of the parties, as follows: Russell A. Campbell and Sarah A. Morrow each

a one-fourth interest; Eugene L. Morrow, William E. Morrow and Harry B. Morrow each a one-eighth interest; Clarence Olson, Glenn Olson and Merle L. Singleton each a one twenty-fourth interest, and prays partition. Eugene L. Morrow appeared by his solicitor and answered the bill, to which answer Harry B. Morrow filed exceptions. Thereafter Eugene L. Morrow filed a cross-bill. But there is nothing in these pleadings that affects the issues raised by this writ of error and so there is no necessity of further considering them here. Russell A. Campbell filed a general demurrer to the original bill filed by Harry B. Morrow. The chancellor sustained the demurrer of Russell A. Campbell and dismissed the bill for want of equity and also dismissed the cross-bill. The assignment of errors questions the action of the chancellor in sustaining the demurrer of Russell A. Campbell to the original bill and dismissing the original bill for want of equity.

The sole question raised by the demurrer was that the interests of the parties were not properly set out in the bill, because Harry B. Morrow, the complainant, and Gertie Olson, the mother of the infant defendants, were illegitimates and could not inherit from their half-sister while the mother was living. Ollie B. Campbell, Eugene L. Morrow and William E. Morrow were the legitimate children of Sarah A. Morrow now living. Harry B. Morrow and Gertie Olson were the illegitimate children of Sarah A. Morrow. Gertie Olson died prior to the death of Ollie B. Campbell, leaving her surviving her minor children, Clarence Olson, Glenn Olson and Merle L. Singleton, who are now living. The question now resolves itself into whether Harry B. Morrow, Clarence Olson, Glenn Olson and Merle L. Singleton did inherit from Ollie B. Campbell.

The identical question presented by this record has not, so far as we are aware, been before this court for decision. Cases have arisen where the statute in question has been construed, but the facts in those cases were not identical

with the instant case. Briefly stated, Ollie B. Campbell died leaving no surviving husband nor child nor descendant of any deceased child, but she 'left surviving her, her mother, Sarah A. Morrow, and her brothers, Eugene. L. Morrow and William E. Morrow. She also left surviving her a half-brother, Harry B. Morrow, (who was the illegitimate son of Sarah A. Morrow,) and Clarence Olson, Glenn Olson and Merle L. Singleton, children of a half-sister, Gertie Olson, deceased, said Gertie Olson being also an illegitimate daughter of Sarah A. Morrow.

Whatever rights, if any, plaintiffs in error have in the real estate of Ollie B. Campbell must be by virtue of section 2 of the Statute of Descent. (*Hudnall* v. *Ham,* 183 Ill. 486.) That section provides: "An illegitimate child shall be heir of its mother and any maternal ancestor, and of any person from whom its mother might have inherited, if living; and the lawful issue of an illegitimate person shall represent such person, and take, by descent, any estate which the parent would have taken, if living." (Hurd's Stat. 1917, p. 1073.)

Under the common law, which we adopted by statute, an illegitimate had no inheritable blood; he was kin to no one; he was *filius nullius.* This common law rule with reference to illegitimates remained the law of this State until 1845, when the legislature abrogated the common law rule and provided that an illegitimate might inherit from its mother. Various other acts were enacted by subsequent legislatures extending the rights of illegitimates, until 1872, when the present Statute of Descent was passed. While, as counsel for the defendants in error contend, the statute conferring rights upon illegitimates is in derogation of the common law, still the tendency of the legislation in this State upon this subject shows an intention upon the part of the legislature to remove the rigors of the common law and to establish a rule of descent with reference to illegitimates consonant with the finer sense of justice and right

and not to visit the sins of the parents upon the unoffend-
ing offspring. In *Bales* v. *Elder,* 118 Ill. 436, we reviewed
the various acts with reference to illegitimates, and in dis-
cussing that statute we said: "It makes him an heir, and
as such he is vested with all the rights, powers and privi-
leges of a legitimate person who may be an heir standing
in the same degree of relationship. An heir is one who,
after his ancestor's death, has a right to inherit the in-
testate estate. An illegitimate, therefore, as heir of his
mother, would be entitled to inherit from her, in case of
her death, in the same manner as her legitimate children.
As heir of any maternal ancestor, and of any person from
whom its mother might have inherited if living, a like posi-
tion is occupied. The statute, as we understand it, confers
upon illegitimates and their lawful issue, as respects the
mother and any maternal ancestor, and any person from
whom the mother might have inherited if living, inheritable
blood, and as such they have the right of inheritance as
fully as legitimate children. There is nothing in the stat-
ute that will allow an illegitimate to inherit from the father
of such person, but the object of the framers of the stat-
ute seems to have been to remove the common law dis-
ability of inheritance through the maternal line and in that
regard place such persons upon the same footing as legiti-
mate persons. We see no other construction that can be
placed on the act without disregarding the plain and em-
phatic language used in the statute, which the rules of con-
struction will not allow."

It is urged by counsel for defendants in error that the
cases of *Bales* v. *Elder, supra,* and *Elder* v. *Bales,* 127 Ill.
425, are not analogous to the instant case, for the reason
that there Sarah Walker, mother of the deceased legitimate
child, from whom the inheritance came, died prior to the
death of the deceased child, but that had she been living
at the time of the death of the deceased child, she, alone,
would have inherited the deceased's estate, and that Bales,

the illegitimate child of the mother, or his heirs, would take
nothing.    This argument is no doubt predicated upon the
language of the court used in *Jenkins* v. *Drane,* 121 Ill.
217.   In that case the facts were that Milburn Soper died
seized of certain real estate.    He was the legitimate son
born to Leonard Soper and Mary Newman Soper.   Mary
Newman, prior to her marriage to Leonard Soper, had two
illegitimate children.   She died prior to the death of her
son, and it was contended that these illegitimate children
or their heirs could not inherit from Milburn Soper.   This
court on page 219 uses the following language: "If Mil-
burn Soper's mother had been living at the time of his death
she would have inherited his property.   She being dead,
then her illegitimate child would take it, because her mother,
if living, would have taken it.   If Deborah Burch was an
illegitimate daughter of Milburn Soper's mother she would
inherit through her mother equally with the legitimate chil-
dren of the mother; and the lawful issue of an illegitimate
person shall represent such person, and take, by descent, any
estate which the mother would have taken if living.   Such
is the plain reading of the statute and such is the construc-
tion which we have recently given to it in the case of *Bales*
v. *Elder,* 118 Ill. 436."   The first sentence of the quotation
might imply that Milburn Soper's mother, had she been liv-
ing, would have taken all of the estate of Milburn Soper to
the exclusion of her illegitimate children.   That language
was unnecessary to the decision of the case, and if it was
intended by the court at that time to make the mother of
an illegitimate child the sole heir to the estate of a legiti-
mate child to the exclusion of the illegitimate child we are
not disposed to follow it.   We do not think, however, that
is a fair construction to be placed on the language used in
that case, because it was said further: "The statute con-
fers upon illegitimates,   *   *   *   as respects the mother
*   *   *   and any person from whom the mother might
have inherited if living, inheritable blood."   The inheritable

blood is transmitted through the mother when the child is born,—not when the mother dies.

There is no question that Harry B. Morrow was the natural brother of the half blood of Ollie B. Campbell. If he had been the legitimate son of Sarah A. Morrow by a former husband he would have been a brother of Ollie B. Campbell of the half blood, and the distinction between the whole and half blood being abolished, he would have taken of his half-sister's estate an equal share with the brothers of the whole blood. The effect of the statute under consideration is to produce exactly that result in respect of his right of inheritance. In all respects Harry B. Morrow, through the inheritable blood transmitted from the mother, became the heir of Ollie B. Campbell as if he were a brother of the whole blood. He did not inherit from the common mother but inherited from Ollie B. Campbell by reason of the inheritable blood transmitted through the mother. (*Elder* v. *Bales, supra; Chambers* v. *Chambers,* 249 Ill. 126.) The words "if living" neither add to nor take from the clause under consideration. The meaning is plain that "an illegitimate child shall be heir  *  *  *  of any person from whom its mother might have inherited." It is plain the mother could not inherit if she were not living, therefore the parenthetical expression "if living" was inserted. We think the clear intention of the statute in question was to remove entirely the bar against illegitimates inheriting through the maternal line.

Entertaining the views we do as to the construction which should be placed upon the statute in question, the decree of the circuit court of Ford county must be reversed and the cause remanded to that court, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*