In the Matter of the Estate of Leonard Crapa, Deceased.
Anthony Calamia, Vita Calamia Bila and Illuminato Crapa, Petitioners-Appellants, v. John T. Dempsey, Administrator and Francesca Miano, Respondents-Appellees.

Gen. No. 45,335.

Opinion filed October 24, 1951. Released for publication November 21, 1951.

MARKHEIM & SOLLO, of Chicago, for appellants; HARRY MARKHEIM, and WALLACE R. SOLLO, of Chicago, of counsel.

. ,

GENEVIEVE CACCIATORE, and WILLIAM PARKER WARD, both of Chicago for appellees; WILLIAM PARKER WARD, of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Petitioners appeal from an order of the circuit court dismissing their petition, originally filed in the probate court of Cook county, where it likewise was dismissed, which sought to vacate the table of heirship entered in said estate in the probate court, and which prayed for a finding that petitioners, first cousins of decedent, were the only heirs at law and next of kin. The finding of heirship in the probate court was that Francesca Miano, respondent to said petition, was the paternal aunt of decedent and his only heir at law and next of kin.

The petition alleged, *inter alia,* that Giuseppa Crapa, the paternal grandmother of decedent, entered into a purported marriage ceremony with one Francesco Candela, on January 7, 1877, in the town of Salaparuta, in the Province of Trapani, Italy, before an archpriest of the church; that it was her second marriage; that both parties were domiciled in said town and remained there until her death in 1915; that said archpriest was not at the time of the purported marriage or at any other time a civil official of the town or of any other governmental authority in Italy; that said marriage ceremony was not entered into before any civil official; that the laws of Italy in force at the time of the purported marriage, and during the lifetime of decedent, specifically provided (a) that a marriage could be celebrated only in a town hall in public manner, before the official of the "Civil Acts of the Town" in which one of the contracting parties had his or her domicile or residence, (b) that a marriage celebrated in any other manner or before any other official was absolutely

504

void and of no effect and not merely voidable, (c) that an intended marriage contracted otherwise than as prescribed could not be validated or recognized as lawful by subsequent ratification or declarations or cohabitation of the parties, and (d) that any offspring of a purported marriage celebrated in any other manner was illegitimate; that respondent, born in 1879 in said town in Italy, was the only child born out of said purported wedlock; that she is an illegitimate with no right of inheritance from decedent; and that the father of decedent herein was the legitimate child of said Giuseppa Crapa by a prior marriage.

The controlling question is whether, under our statutes, the respondent, an illegitimate child, has the right of inheritance in the instant estate.

■ Under the common law an illegitimate child had no inheritable blood, was kin to no one and was *filius nullius*. *Morrow v. Morrow*, 289 Ill. 135, 138. The rigors of the common law affecting the rights of an illegitimate child have progressively, by statutory enactments, been removed. The present Probate Act (ch. 3, par. 163, sec. 12 (6), Ill. Rev. Stat. 1949) [Jones Ill. Stats. Ann. 110.259] provides:

"An illegitimate child is heir of his mother and of any maternal ancestor; and in all cases where representation is provided for by this Act an illegitimate child represents his mother. . . ."

The predecessor statute, the Act of 1872, sec. 2, read:

"An illegitimate child shall be heir of its mother and any maternal ancestor, (and of any person from whom its mother might have inherited, if living)." (Parentheses supplied.)

The language in parentheses was omitted in the present Probate Act.

■ It is earnestly contended by petitioners that the omission from the present Probate Act of the language

in parentheses clearly indicates the intention of the legislature to limit the right of inheritance of the illegitimate child to its mother, and "maternal ancestor," and not from collaterals; that respondent's mother, having died long before the decedent, Leonard Crapa, the maternal grandson, he could not be considered an ancestor of respondent's mother within the meaning of the statute; and that decedent herein must be considered a collateral.

The test, in our judgment, is—could respondent's mother, were she alive, inherit the intestate estate of the decedent herein? Petitioners, in oral argument, admitted she could, but urge that the omission of the language referred to, from the present Probate Act, excludes the contingency "if living," and respondent is precluded from inheriting. We regard this position as untenable. The trend of modern legislation and the interpretation by our courts of legislative enactments relating to descent and illegitimacy have been toward liberal construction involving the rights of illegitimates.

In *Morrow v. Morrow, supra,* the court said (pp. 138, 139):

"This common law rule with reference to illegitimates remainded the law of this State until 1845, when the legislature abrogated the common law rule and provided that an illegitimate might inherit from its mother. Various other acts were enacted by subsequent legislatures extending the rights of illegitimates, until 1872, when the present Statute of Descent was passed. While, as counsel for the defendants in error contend, the statute conferring rights upon illegitimates is in derogation of the common law, still the tendency of the legislation in this State upon this subject shows an intention upon the part of the legislature to remove the rigors of the common law and to establish a rule

of descent with reference to illegitimates consonant with the finer sense of justice and right and not to visit the sins of the parents upon the unoffending offspring. . . . An illegitimate, therefore, as heir of his mother, would be entitled to inherit from her, in case of her death, in the same manner as her legitimate children. As heir of any maternal ancestor, and of any person from whom its mother might have inherited if living, a like position is occupied.''

The court, in considering the language ''if living'' in the Act of 1872, further said (p. 141):

''The words 'if living' neither add to nor take from the clause under consideration. The meaning is plain that 'an illegitimate child shall be heir . . . of any person from whom its mother might have inherited.' It is plain the mother could not inherit if she were not living, therefore the parenthetical expression 'if living' was inserted. We think the clear intention of the statute in question was to remove entirely the bar against illegitimates inheriting through the maternal line.''

██ We think that the term ''maternal ancestor,'' employed in the statute, should not be given a restricted meaning but, in its broadest sense, should be interpreted to include in a proper case the right of an illegitimate child to inherit from her maternal grandson. Especially should this be so, in the light of the language of section 9, paragraph 159, of said Probate Act [Ill. Rev. Stat. 1949, ch. 3; Jones Ill. Stats. Ann. 110.255] which provides:

''This Act and the rules now or hereafter adopted pursuant thereto shall be liberally construed to the end that controversies and the rights of the parties may be speedily and finally determined; and the rule that statutes in derogation of the common law shall be strictly construed does not apply.''

In *People v. Moczek,* 407 Ill. 373, 382, it was stated:

"Since statutes are to be construed according to their intent and meaning, a situation which is within the object, spirit and meaning of a statute is regarded as within the statute although not within the letter. (*Burke v. Industrial Com.* 368 Ill. 554.)"

It follows from what we have said that the judgment of the circuit court must be affirmed.

*Affirmed.*

KILEY, P. J. and LEWE, J., concur.