Nellie Gregory and Betsy Alice Clark, Plaintiffs-Appellants, v. The County of LaSalle, State of Illinois, and "Unknown Owners," Defendants-Appellees.

Gen. No. 67-5.

Third District.

January 24, 1968.

White & Sinon, of Ottawa, and John R. Fielding, of Chicago, for appellants.

Robert E. Richardson, State's Attorney of LaSalle County, of Ottawa, for appellees.

ALLOY, P. J.

In May 1956 an order was entered escheating the Estate of Walter Clark to the County of LaSalle and the order placed title to the real estate involved in the name of LaSalle County. Walter Clark had died a resident of LaSalle County in 1950 leaving substantial personal property and real estate in LaSalle County. No heirs were discovered and no beneficiaries designated by will were eligible to inherit. The estate was handled as an intestate estate. At the time of the death of Walter Clark, section 7 of the Escheat Act (Ill Rev Stats 1955, c 49) allowed a claimant five years after an escheat order in which to file as an heir and claim escheated property. This statute also provided that as to persons who are infants, or of unsound mind or beyond the limits of the United States, they had an additional five years after their disabilities were removed to claim escheated property. The latter section was amended in 1961 to provide as follows:

> "The county treasurer shall keep just and true accounts of all moneys paid into the treasury, and if any person appears within 10 years after the death of the intestate and claims any money paid into the treasury as aforesaid as his, on legal representation such person may file a petition in chancery in the circuit court of such county, stating the nature of his claim and praying such money may be paid to him; . . . And if any person appears and claims any lands vested in the county as aforesaid, within 5 years after the judgment was rendered, such person may file his petition in chancery in the circuit court of such county in which the lands claimed lie, setting forth the nature of his claim and praying that the lands be relinquished to him; . . . And all persons who fail to appear and file their petitions within the times

limited, aforesaid, shall be forever barred, saving, however, to infants and persons of unsound mind the right to apear and file their petition as aforesaid, at any time within 5 years after their respective disabilities are removed: . . .

"All persons beyond the limits of the United States, as to whom a right to petition under this Section is otherwise barred by this amendatory Act of 1961 or will be barred within one year after the effective date of this amendatory Act of 1961, may file a petition pursuant to this Section at any time within two years after such effective date. As amended by act approved August 21, 1961."

The effect of this amendment of 1961 was to establish a two-year limitation period as to persons living beyond the limits of the United States.

Following the escheat order entered in 1956, numerous heirs of Walter Clark began to appear. In July, 1960, Nellie Gregory and Betsy Alice Clark, residents of England, filed to recover the property from the County of LaSalle, contending they were heirs of Walter Clark. The petition set up that there were still "Unknown Owners" of the property and that they were made parties to the proceeding and publication was made as to "Unknown Owners." In all, 29 people claimed to share the property as heirs of Walter Clark. Twenty-three of the persons filed in the Circuit Court of LaSalle County, 4 came into the United States District Court in a suit which later included 23 of the people in the Circuit Court, and 2 more have attempted to intervene in the Federal Court, in the Circuit Court, in this court and in the Supreme Court of this State.

For clarity, we must specify that there are three sets of heirs involved. (1) There are claimants through surviving first cousins of Walter Clark, being Nellie Clark Gregory and Betsy Alice Clark, who claim through chil-

293

dren of Ellen Clark, aunt of decedent Walter Clark. Ellen Clark was never married so they claim through illegitimates. Betsy Alice Clark died after the action was instituted and that interest is represented by the administrator of her estate. (2) Joan Baxter and James Clark, children of William Henry Clark and grandchildren of William Clark, an uncle of decedent, Walter Clark, claiming through a surviving first cousin, sought to intervene in the Circuit Court and in this court but their request for intervention was denied as being filed too late. (3) Finally, there are 21 claimants under Betsy Clark, who are first cousins *once removed* and these 21 claimants can succeed only if the two groups claiming through first cousins are incapable of taking. The question in such case would be whether the estate would escheat to the County of LaSalle or whether it should be distributed to the first cousins once removed.

As the issues are now presented in this court, there is one basic question and that is whether Nellie Gregory and Betsy Alice Clark should have been allowed to share in the estate as claimants through surviving first cousins. This involves a determination as to whether the Illinois statute in effect at the death of decedent, Walter Clark, barred them as descendants of illegitimates. The problem revolves around the construction of what was then paragraph 163 of chapter 3 of the Probate Act (1941 Ill Rev Stats, c 3, par 163). This is now section 12 of the Probate Act (1965 Ill Rev Stats, c 3, § 12). This statute at the time of the death of Walter Clark provided as follows:

"An illegitimate child is heir of his mother and of any maternal ancestor; and in all cases where representation is provided for by this Act an illegitimate child represents his mother and his lawful issue represents him and take, by descent, any estate which the parent would have taken if living. An illegitimate child whose parents intermarry and who is acknowl-

edged by the father as the father's child, shall be considered legitimate. 1939, July 24, Laws 1939, p 4 S 12."

This particular provision had been changed by the act of 1939. Prior to 1939 the statute had provided in part that:

"An illegitimate child shall be an heir of its mother and any maternal ancestor, and of any person from whom its mother might have inherited, if living."

Prior to 1939 under this statute there could be inheritance through a parent who was an illegitimate child. Ellen Clark was an aunt of the decedent Walter Clark. Although she never married she was the mother of five children, one of whom was the mother of Nellie Gregory and another of whom was the father of Betsy Alice Clark.

The problem arises as a result of the omission from the 1939 statute of the words "of any person from whom its mother might have inherited, if living." Prior to this enactment, illegitimates and descendants inherited through their mother from collateral relatives (Morrow v. Morrow, 289 Ill 135, 124 NE 386; Chambers v. Chambers, 249 Ill 126, 94 NE 108). The 1939 amendment was, however, construed in one case, Spencer v. Burns, 413 Ill 240, 108 NE2d 413. In that case the court looked first at the language that had been omitted from the 1939 act, being the phrase "any person from whom its mother might have inherited, if living." The court then looked at the new language which was added to the statute and, after an analysis by the court, concluded that it was not the intention of the 1939 legislature to merely reword the former statute, but rather, to make a change in the substantive law. The court in seeking to construe the phrase "and of any maternal ancestor" to allow an inheritance by illegitimates, felt that the phrase "maternal ancestor" was not susceptible of such construction.

The court in that case stated that although the language indicated that the court felt that the best result would be to allow illegitimates to inherit, they felt bound by the new wording of the statute. The court said there (at page 255) :

"Giving service to the common meaning of the words 'maternal ancestor' and avoiding a tortured meaning to produce what might be a more desirable result, it is our opinion that the trial court properly concluded that, as section 12 of the Probate Act is now constituted, it manifests a legislative intent and direction that the right of an illegitimate to inherit is now limited to a right to take only from his mother and from her lineal ascendants."

In the case of Spencer v. Burns the court recognized the policy of the State of Illinois since 1872 had been to allow such inheritance by illegitimates, but in construing the statute the court felt bound to determine the legislative intent from its interpretation of the exact language of the statute itself. If nothing further had transpired since the Spencer case, we would be bound by the rule set forth in Spencer v. Burns, which, in effect, would be to deny the claim of Nellie Gregory and Betsy Alice Clark.

We must give consideration, however, to the fact that six months after the decision in Spencer v. Burns, the State Legislature in 1953, met and amended the statute of descent by reinserting the words "and of any person from whom his mother might have inherited, if living." We are, therefore, confronted with the precise question as to whether this court can now consider the amendment of the 1953 legislature which came after the decision in Spencer v. Burns (and possibly in consequence thereof) as an aid to the construction of the 1939 statute referred to.

■■■■ The cardinal rule in construction of Illinois statutes, to which all other canons and rules are sub-

ordinate, is that a statute must be construed so as to ascertain and give effect to the intention of the General Assembly as expressed in the statute. It is the intention of the General Assembly which controls, and a statute should never be construed to defeat or override the intention of the General Assembly. Where the intention of the General Assembly has been ascertained, a court must give effect to that intention if it is not in conflict with constitutional provisions. (34 Illinois Law and Practice, pp 92–94.) As stated in the case of Lincoln Nat. Life Ins. Co. v. McCarthy, 10 Ill2d 489, 140 NE2d 687 at pp 494–495:

> "A statute or ordinance must be construed according to its intent and meaning, and a situation that is within the object, spirit and meaning of the statute is regarded as within the statute, although not within the letter; and a situation that is within the letter is not regarded as within the statute unless also within its object, spirit and meaning. People ex rel. Barrett v. Thillens, 400 Ill 224."

It is thus the intention of the General Assembly which we must seek to determine.

In determining the intention of the General Assembly which passed the statute, it is permissible to look to later actions of the legislature. These later actions can be amendments to the statute being construed. In Modern Dairy Co. v. Department of Revenue, 413 Ill 55, 108 NE2d 8, the court was construing the phrase "user or consumer" in connection with the Retailer's Occupation Tax Act as applied to sales by a dairy to a Chicago State Hospital. A 1933 legislature had passed the first sales tax statute using in the title of the act the words "sale at retail." This was found to be unconstitutional so it was amended in 1941 to refer to "purchasers for use or consumption." The question in the Modern Dairy case was what the

legislature intended by the words "user or consumer" in the title of the Retailer's Occupation Tax Act. The court stated (at pages 64–65):

"If a broad and liberal definition of these terms was intended, the purchaser here could be considered the user or consumer as contemplated by the act, and the amendment could reasonably be within the title of the act."

In the Modern Dairy case the court looked first to the statute itself and how it had originally been construed by the court and then looked to the amendments made by the legislature attempting to change the court's original interpretation. After consideration of the amendments, the court changed its former interpretation of the statute. As a basis for this construction, the court stated (at page 66):

"The legislature has the power to make any reasonable definition of the terms in a statute, and such definitions, for the purpose of the act, will be sustained. (Smith v. Murphy, 384 Ill 34; Krebs v. Thompson, 387 Ill 471; Bohm v. State Employees' Retirement System, 404 Ill 117.) Once the legislative intent is ascertained it should be given effect by the courts unless it is clearly in violation of some provision of the constitution, and captious and hypothetical reasoning should no longer be indulged. (Foltz v. Davis, 68 F2d 495.) When this court construes a statute and that construction is not interfered with by the legislature, it is presumed that such construction is in harmony with the legislative intent. (Consumers Co. v. Industrial Com., 364 Ill 145.) Conversely, if the legislature, after the courts construe the terms used in an act, attempts by amendment to define those terms used in that act, the reasonable presumption is that the court's construction was not in accord with the original intent of the legislature.

(Domarek v. Bates Motor Transport Lines, Inc., 93 F2d 522; In re Hurle, 217 Mass 223, 104 NE 336.) It would then seem incumbent upon the court to reconsider its construction of the act and, if it appeared to be clearly at variance with the interpretation of the legislature, to harmonize the court's construction with the legislative intent."

This same standard of statutory construction was affirmed in People ex rel. Spitzer v. County of LaSalle, 20 Ill2d 18, 169 NE2d 521. In that case the court stated, at page 28:

"Where a court has construed the terms used in an act, and the legislature thereafter attempts by amendment to define those terms, the reasonable presumption is that the court's construction was not in accord with the original intent of the legislature. (Modern Dairy Co. v. Dept. of Revenue, 413 Ill 55). The trial court on June 6, 1958, found that section 25.16 of the law relating to counties as it existed in 1955, did not constitute authority for the contracts entered into between these defendants. We have a right to look to subsequent amendatory legislation to arrive at the correct meaning of the terms of the statute, where the legislature has attempted to define those terms. (Modern Dairy Co. v. Dept. of Revenue, 413 Ill 55.)"

 We, therefore, feel that we are justified in looking to the 1953 amendment of the statute under consideration in the instant case and in construing the wording of the statute as it existed prior to such 1953 amendment. We note that the legislature reinserted the phrase "and of any person from whom its mother might have inherited, if living." We conclude that this shows that it was the intent of the legislature in 1939 to allow illegitimates to inherit from collaterals. The mere change in the statute alone reinserting the omitted phrase six months after the

Spencer v. Burns case is significant. We may also consider that the law was well settled from 1872 until 1939 that such illegitimates could inherit, and that it was also the policy in Illinois to remove "the onus of illegitimacy from unoffending children" (Spencer v. Burns, supra, page 255).

█ In the light of such amendment we feel that the legislature in 1939 did not intend to change the former law. It is apparent that the legislature in 1939 intended by the added phrase to restate the probate act to provide for inheritance by representation by the illegitimate child and thereby merely to restate the law as it existed prior to 1939. It is true that the court in Spencer v. Burns interpreted this differently, but the legislature had not added the amendment referred to at such time. It did, however, act quickly to reinsert the phrase thereafter. We conclude that this demonstrates that the 1939 legislature did not intend to change the former law. We are also aware of the fact that the 1939 change was not an isolated modification of a particular section of the statute alone but was a rewriting of the entire probate act. There is no showing of any basic reason why there should be a substantive change in the former 1872 statute relating to inheritance through illegitimates, particularly in view of the 1953 amendment. It is our conclusion that the General Assembly in 1939 omitted the phrase thinking it had accomplished the same result by the language which was added. When the Supreme Court in Spencer v. Burns, supra, interpreted this as a substantive change, the legislature quickly added the clarifying clause within six months thereafter. In our judgment this shows that the intention of the 1939 General Assembly was not to make a substantive change in the former 1872 law under consideration.

We, therefore, feel that we are not bound by the conclusion of the court in Spencer v. Burns, supra, in view of

the legislative change. Those claiming through illegitimates should be allowed to inherit under the terms of the 1940 probate act (enacted 1939). We, therefore, conclude that plaintiffs Nellie Gregory and Betsy Alice Clark were entitled to inherit through first cousins of the decedent.

We also note that there is an action pending on appeal in the Supreme Court of the State of Illinois involving the rights of Joan Baxter and James Clark. Until final determination by the Supreme Court of that issue, the extent of the interest of Nellie Gregory and Betsy Alice Clark could not be determined. The order of the Circuit Court of LaSalle County with respect to Nellie Gregory and Betsy Alice Clark will, therefore, be reversed and cause remanded to said court with directions to set aside and vacate the order of escheat to the County of LaSalle and to proceed in accordance with the views expressed in this opinion.

Reversed and remanded with directions.

STOUDER and SCHEINEMAN, JJ., concur.