NOTICE

Decision filed 06/05/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-04-0643

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) Effingham County. |
| | ) |
| v. | ) No. 03-CF-171 |
| | ) |
| LORENZO O. QUALLS, | ) Honorable |
| | ) Sherri L. E. Tungate, |
| Defendant-Appellant. | ) Judge, presiding. |

_____

JUSTICE HOPKINS delivered the opinion of the court:

The defendant, Lorenzo O. Qualls, appeals from his conviction for possession of a deadly substance (720 ILCS 5/20.5-6 (West 2002)), arguing that anhydrous ammonia is not a "poisonous gas" within the meaning of the statute defining the offense. We agree and reverse.

BACKGROUND

Anhydrous ammonia is a commercial fertilizer regulated by the Illinois Fertilizer Act of 1961 (505 ILCS 80/1 *et seq.* (West 2004)). Anhydrous ammonia is also used to manufacture methamphetamine, a schedule II controlled substance (720 ILCS 570/206(d)(2) (West 2004)). In the summer of 2003, thefts of anhydrous ammonia by individuals engaged in the manufacture of methamphetamine resulted in increased patrols of anhydrous ammonia storage facilities in Effingham County. On August 3, 2003, at approximately 2:30 a.m., Sergeant Paul Kuhns of the Effingham County sheriff's department was patrolling the area near one such facility when he observed the defendant's pickup truck stuck in a ditch. Sergeant Kuhns also observed what he thought was steam coming from the cab of the truck.

1

When Sergeant Kuhns exited his patrol car to investigate, the defendant approached and placed his hands on top of the patrol car. Upon smelling the odor of anhydrous ammonia on the defendant, Sergeant Kuhns handcuffed him, patted him down for weapons, and placed him in the back seat of the patrol car. The defendant told Sergeant Kuhns that a pitcher of anhydrous ammonia had spilled inside the cab of the truck. Sergeant Kuhns then approached the truck so that he could turn off its engine. Sergeant Kuhns was initially unable to enter the truck's cab because the anhydrous ammonia fumes rising from its floorboard were overwhelming. In the ditch, Sergeant Kuhns found a plastic pitcher from which fumes were also emanating. Sergeant Kuhns was able to turn off the truck on a second attempt. Thereafter, the defendant waived his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)) and agreed to speak with Sergeant Kuhns. The defendant admitted to stealing anhydrous ammonia from the nearby storage facility and explained that he had driven his truck off the road when the pitcher that he was using to contain the anhydrous ammonia spilled onto the floor. At the storage facility, the defendant showed Sergeant Kuhns the exact tank from which the anhydrous ammonia had been taken. Sergeant Kuhns saw that the tank's cap had been removed and that there were footprints near the tank. Lithium battery strips (another ingredient used to manufacture methamphetamine) were recovered from the front-left pocket of the defendant's pants.

On August 4, 2003, the State filed a single-count information charging the defendant with unlawful possession of a deadly substance (720 ILCS 5/20.5-6 (West 2002)).[1] The

---

[1]We note that the defendant could have been charged with the unlawful transfer and transportation of anhydrous ammonia under section 21-1.5 of the Criminal Code of 1961 (720 ILCS 5/21-1.5 (West 2002) (repealed by Pub. Act 94-556, §1056, eff. September 11, 2005 (now see 720 ILCS 646/25 (West Supp. 2005)))).

charge alleged that the defendant knowingly possessed "a poisonous gas, anhydrous ammonia," with the intent to use the gas to commit the felony offense of unlawful manufacture of methamphetamine. The following day, a superceding indictment was filed alleging the same. Through appointed counsel, the defendant subsequently moved to have the charge dismissed, arguing, *inter alia*, that "anhydrous ammonia was not intended by the legislature to be a deadly substance under the Possession of a Deadly Substance statute." The circuit court denied the motion to dismiss, and on June 29, 2004, the cause proceeded to a stipulated bench trial.

At the trial, to establish that anhydrous ammonia is a "poisonous gas," the State presented the stipulated testimony of Mr. Jamie Southard, an expert in the handling, storage, and general properties of anhydrous ammonia. The parties stipulated as follows:

"Mr. Southard would testify that anhydrous ammonia[,] while stored under pressure in approved containers[,] is a liquid. When incorporated into the soil with approved agricultural equipment[,] anhydrous ammonia bonds with soil moisture and adds nitrogen to the soil. Properly contained and applied[,] anhydrous ammonia poses no danger to humans. Upon exposure to the air in an unpressurized state[,] anhydrous ammonia changes to a gaseous form and is attracted to any item or substance containing water. Exposure to anhydrous ammonia by unprotected humans in concentrations of 50 parts per million is sufficient to result in burning to mucous membranes in the eyes, nose, and lungs. Exposure to anhydrous ammonia by unprotected humans[] in a [*sic*] concentrations of 400 parts per million or greater is considered, according to regulations promulgated by the Occupational Safety and Health Administration with which Mr. Southard is familiar, immediately dangerous to life and health. Mr. Southard would testify that, based upon his training and experience, prolonged exposure to those concentrations of anhydrous ammonia can

3

result in death to unprotected humans."

Referencing Southard's testimony that "prolonged exposure to those concentrations of anhydrous ammonia can result in death to unprotected humans" and rejecting the defendant's argument that anhydrous ammonia is not a "poisonous gas," the circuit court found the defendant guilty and sentenced him to a four-year term of Treatment Alternatives for Safe Communities probation (see 20 ILCS 301/40-10 (West 2002)). The defendant filed a timely notice of appeal.

ANALYSIS

The issue before us is whether anhydrous ammonia is a "poisonous gas" as the term is used in section 20.5-6(a) of the Criminal Code of 1961, which defines the offense of "possession of a deadly substance" as follows:

"A person commits the offense of possession of a deadly substance when he or she possesses, manufactures[,] or transports any poisonous gas, deadly biological or chemical contaminant or agent, or radioactive substance either with the intent to use such gas, biological or chemical contaminant or agent, or radioactive substance to commit a felony or with the knowledge that another person intends to use such gas, biological or chemical contaminant or agent, or radioactive substance to commit a felony." 720 ILCS 5/20.5-6(a) (West 2002).

The defendant argues that the term "poisonous gas" should be interpreted to mean a gas that is designed to kill or injure or tends to kill or injure "in normal use," *e.g.*, sarin gas or mustard gas. The defendant maintains that the term should not be read to include gases that are merely deadly or injurious "in particular unsafe circumstances," *e.g.*, anhydrous ammonia or carbon monoxide. The State responds that the term "poisonous gas" should be broadly interpreted to mean any gas "capable of causing death or severe injury."

"How a statute is interpreted is not a matter left to the trial court's discretion. It

4

presents a question of law, which we review *de novo*." *In re Marriage of Rogers*, 213 Ill. 2d 129, 135-36 (2004). The "primary objective when construing the meaning of a disputed statute is to ascertain and give effect to the intent of the legislature." *People v. Robinson*, 172 Ill. 2d 452, 457 (1996). "All other rules of statutory construction are subordinate to this cardinal principle." *In re Detention of Powell*, 217 Ill. 2d 123, 135 (2005). "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." *In re R.L.S.*, 218 Ill. 2d 428, 433 (2006). "If the statutory language is clear and unambiguous, then there is no need to resort to other aids of construction." *In re D.L.*, 191 Ill. 2d 1, 9 (2000). "A statute is ambiguous if it permits more than one reasonable interpretation." *People v. Robinson*, 217 Ill. 2d 43, 55 (2005).

Section 20.5-6 does not define the term "poisonous gas," and the term is not otherwise defined under Illinois law. We may therefore consult a dictionary to ascertain the term's meaning. See *People v. Collins*, 214 Ill. 2d 206, 214-15 (2005). Something is "poisonous" if it "is poison" or "has the qualities or effects of poison." Webster's Third New International Dictionary 1751 (1993). The word "poison" means "a substance (as a drug) that in suitable quantities has properties harmful or fatal to an organism when it is brought into contact with or absorbed by the organism." Webster's Third New International Dictionary 1751 (1993). A "poison gas" is defined as "a poisonous gas or a liquid or solid giving off poisonous vapors designed (as in chemical warfare) to kill, injure, or disable by inhalation or contact." Webster's Third New International Dictionary 1751 (1993). Within the parameters of these definitions and consistent with the parties' respective interpretations, the term "poisonous gas" could reasonably be construed to mean either a gas "designed (as in chemical warfare) to kill, injure, or disable by inhalation or contact" or a gas that "in suitable quantities has properties harmful or fatal to an organism when it is brought into contact with or absorbed by the organism." As used in section 20.5-6, the term "poisonous gas" is therefore ambiguous.

5

We may therefore "consider the purpose of the law, the evils it was intended to remedy, and the legislative history behind it." *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 524 (2002). Traditional aids of statutory construction may also be employed, and "the rule that penal statutes should be construed to afford lenity to the accused" applies. *People v. Roberts*, 214 Ill. 2d 106, 118 (2005).

Here, the doctrine of *noscitur a sociis*–"a word is known by the company it keeps" (*Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 6 L. Ed. 2d 859, 863, 81 S. Ct. 1579, 1582 (1961))–is particularly applicable. Pursuant to this maxim, "[t]he meaning of questionable words or phrases in a statute may be ascertained by reference to the meaning of words or phrases associated with it." *Hayes v. Mercy Hospital & Medical Center*, 136 Ill. 2d 450, 477 (1990). The doctrine of *noscitur a sociis* is relied upon "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words" (*Gustafson v. Alloyd Co.*, 513 U.S. 561, 575, 131 L. Ed. 2d 1, 15, 115 S. Ct. 1061, 1069 (1995)) and "to avoid the giving of unintended breadth to a legislative act" (*Hayes*, 136 Ill. 2d at 477). Here, the term "poisonous gas" appears in conjunction with the terms "deadly substance" and "deadly biological or chemical contaminant or agent"; this indicates that the term "poisonous gas" was intended to mean an inherently deadly or injurious gas, as opposed to a potentially deadly or injurious gas. The statute's legislative history further supports this conclusion.

The statute creating the offense of possession of a deadly substance originated in the 91st Illinois General Assembly as a part of Senate Bill 509 and was ultimately enacted as a part of Public Act 91-121, effective July 15, 1999 (1999 Ill. Laws 2001). When the bill passed in the Senate, it was touted–in relevant part–as an "anticrime initiative *** aimed at *** terrorism." 91st Ill. Gen. Assem., Senate Proceedings, March 25, 1999, at 106 (statements of Senator Dillard). During subsequent proceedings before the Criminal Law Judiciary Committee of the House of Representatives, it was noted that the statute was

6

necessary because Illinois had no law criminalizing the possession of "biological warfare chemicals" or "poison gas" such as "sarin gas."  91st Ill. Gen. Assem., House Proceedings, April 22, 1999, Judiciary II Committee Hearing (taped debate on Senate Bill 509).  The legislative history behind section 20.5-6 thus reveals that the statute was enacted to criminalize the unlawful possession of inherently deadly or injurious substances, such as gases designed, as in chemical warfare, to kill or injure.

We lastly note that the Methamphetamine Control and Community Protection Act, effective September 11, 2005, specifically prohibits the "possession, procurement, transportation, storage, or delivery of anhydrous ammonia *** with the intent that the anhydrous ammonia be used to manufacture methamphetamine."  720 ILCS 646/25(a)(1) (West Supp. 2005).  This further supports the conclusion that the term "poisonous gas" was never meant to encompass anhydrous ammonia.  See *Gregory v. County of LaSalle*, 91 Ill. App. 2d 290, 297 (1968) ("In determining the intention of the General Assembly which passed the statute, it is permissible to look to later actions of the legislature").

CONCLUSION

We hold that anhydrous ammonia is not a "poisonous gas" for purposes of section 20.5-6 of the Criminal Code of 1961 (720 ILCS 5/20.5-6 (West 2002)).  The State's proposed interpretation of the term "poisonous gas" is contradicted by the statute's legislative history and gives the statute unintended breadth.  We accordingly reverse the defendant's conviction.


Reversed.


GOLDENHERSH and CHAPMAN, JJ., concur.


7

NO. 5-04-0643

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) Effingham County. |
| | ) |
| v. | ) No. 03-CF-171 |
| | ) |
| LORENZO O. QUALLS, | ) Honorable |
| | ) Sherri L. E. Tungate, |
| Defendant-Appellant. | ) Judge, presiding. |

_____

**Opinion Filed**:     June 5, 2006

_____

**Justices**:     Honorable Terrence J. Hopkins, J.

Honorable Richard P. Goldenhersh, J., and
Honorable Melissa A. Chapman, J.,
Concur

_____

**Attorneys**     Daniel M. Kirwan, Deputy Defender, Larry R. Wells, Assistant Defender, Office of
**for**     the State Appellate Defender, Fifth Judicial District, 117 North Tenth Street, Suite
**Appellant**     300, Mt. Vernon, IL 62864

_____

**Attorneys**     Hon. Edward C. Deters, State's Attorney, Effingham County Courthouse, 101 North
**for**     4th, Suite 400, Effingham, IL 62401; Norbert J. Goetten, Director, Stephen E. Norris,
**Appellee**     Deputy Director, Kendra S. Peterson, Staff Attorney, Office of the State's Attorneys
Appellate Prosecutor, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt.
Vernon, IL 62864

_____