NOS. 4-07-0032, 4-07-0033, 4-07-0034 cons. Filed 2/15/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|        Plaintiff-Appellee, | ) | Circuit Court of |
|        v. | ) | Clark County |
| TROY A. DAVISON, | ) | Nos. 03CF171 |
|        Defendant-Appellant. | ) |     04CF84 |
| | ) |     03CF165 |
| | ) | |
| | ) | Honorable |
| | ) | Tracy W. Resch, |
| | ) | Judge Presiding. |

_____

JUSTICE KNECHT delivered the opinion of the court:

Defendant, Troy A. Davison, in these consolidated appeals, first appeals from his conviction for possession of a deadly substance (720 ILCS 5/20.5-6 (West 2002)), arguing (1) the evidence was not sufficient to prove guilt beyond a reasonable doubt because anhydrous ammonia is not a "poisonous gas" within the meaning of the statute defining the offense, (2) the sentences he received for possession of a deadly substance, unlawful possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2004)) and unlawful manufacture of a controlled substance (720 ILCS 570/401(c)(6.5) (West 2002)) were excessive; and (3) the trial court's order directing the balance of his posted bond money, after restitution, court fees, and public-defender reimbursement in each case be split equally between the Clark County Sheriff's office and the Southeast Illinois Drug Task Force. For the following reasons, we reverse defendant's conviction for possession of a deadly substance; reverse defendant's conviction

and sentence for unlawful possession of a stolen vehicle and remand with directions; and affirm defendant's conviction of unlawful manufacture of a controlled substance but reverse his sentence therein and remand with directions.

## I. BACKGROUND

In Clark County case No. 03-CF-165, our case No. 4-07-0034, the State brought numerous charges against defendant stemming from an incident on December 5, 2003. On December 8, 2003, the State filed the charges. On December 9, 2003, defendant posted bond of $3,500; that same day, he assigned his bond to Kelly Houser.

In Clark County case No. 03-CF-171, our case No. 4-07-0032, while defendant was out on bond from case No. 03-CF-165, the State charged defendant with unlawful transportation of anhydrous ammonia, possession of a deadly substance, unlawful possession of a stolen vehicle, and unlawful possession of a vehicle with a removed vehicle identification number based on a December 23, 2003, incident. On January 9, 2004, defendant posted bond of $7,500; in January 2004, he executed a bond assignment to Julie Nasser.

Then on June 21, 2004, in Clark County case No. 04-CF-84, our case No. 4-07-0033, the State charged defendant with unlawful possession of a stolen vehicle based on conduct of June 19, 2004. On June 29, 2004, defendant posted $10,000 bond; that same day, he assigned his bond to Dawn Kemper.

On August 10, 2004, in case No. 03-CF-171, the trial

- 2 -

court granted defendant's motion to sever counts, and the State proceeded to a jury trial on the sole charge of possession of a deadly substance. On August 11, 2004, the jury convicted defendant of that offense. Defendant left the courthouse after the jury retired to deliberate and never returned that day.

The trial court scheduled a pretrial hearing for August 16, 2004, for both case Nos. 03-CF-165 and 04-CF-84. When defendant failed to appear, the court ordered his bond forfeited and issued a warrant for his arrest. The court sent notice to defendant of a bond forfeiture hearing to be held on September 20, 2004. Defendant failed to appear and the court continued the hearing for two days. The State filed an objection to the bond forfeiture, expressing concern about restitution for victims and the fact law-enforcement agencies had expended considerable time investigating defendant's criminal activities. On September 22, 2004, the court entered a forfeiture judgment but ordered the clerk not to distribute the funds until further order.

On September 29, 2004, in case No. 03-CF-171, defense counsel filed a posttrial motion on defendant's behalf, which the court denied. The court scheduled sentencing for December 20, 2004.

Authorities eventually apprehended defendant. On November 9, 2004, defendant pleaded guilty to unlawful possession of a stolen vehicle in case No. 04-CF-84. On December 13, 2004, in case No. 03-CF-165, defendant pleaded guilty to unlawful manufacture of a controlled substance in that he manufactured

- 3 -

more than 5 grams, but less than 15 grams, of a substance containing methamphetamine in violation of section 401(c)(6.5) of the Illinois Controlled Substances Act (720 ILCS 570/401(c)(6.5) (West 2002)).

On December 20, 2004, the trial court held a combined sentencing hearing for all three cases. The court sentenced defendant to concurrent prison terms of 26 years for possession of a deadly substance in case No. 03-CF-171, 7 years for unlawful possession of a stolen motor vehicle in case No. 04-CF-84, and 15 years for unlawful manufacture of a controlled substance in case No. 03-CF-165.

On January 18, 2005, defendant filed a motion to withdraw guilty plea and vacate sentence as to the guilty pleas he entered in case Nos. 03-CF-165 and 04-CF-84; and he filed a motion to reduce sentence as to each case. On May 11, 2005, he filed an amended motion to reconsider sentence; and on May 15, 2005, he filed an amended motion to withdraw guilty pleas. On July 19, 2006, the trial court denied the amended motion to withdraw guilty pleas. On November 27, 2006, defendant then filed a second amended motion to reconsider sentence; on January 8, 2007, the court denied it. These appeals, which this court consolidated, followed.

II. ANALYSIS

A. Is Anhydrous Ammonia a "Poisonous Gas" for Purposes of the Offense of Possession of a Deadly Substance?

In case No. 03-CF-171, defendant was charged with and convicted of possession of a deadly substance under section 20.5-

6 of the Criminal Code of 1961 (Code) (720 ILCS 5/20.5-6 (West 2002)). This charge was severed for trial from charges of unlawful transportation of anhydrous ammonia, unlawful possession of a stolen vehicle, and unlawful possession of a vehicle with a removed vehicle identification number.

Section 20.5-6(a) provides as follows:

"(a) A person commits the offense of possession of a deadly substance when he or she possesses, manufactures[,] or transports any poisonous gas, deadly biological or chemical contaminant or agent, or radioactive substance either with the intent to use such gas, biological or chemical contaminant or agent, or radioactive substance to commit a felony or with the knowledge that another person intends to use such gas, biological or chemical contaminant or agent, or radioactive substance to commit a felony." 720 ILCS 5/20.5-6(a) (West 2002).

This offense is a Class 1 felony. 720 ILCS 5/20.5-6(b) (West 2002).

The proposition anhydrous ammonia is a poisonous gas for purposes of section 20.5-6 is an essential element of the State's case here. Defendant argues the evidence was not sufficient to prove him guilty beyond a reasonable doubt because anhydrous ammonia is not a "poisonous gas" within the meaning of

section 20.5-6, that is, possession of a deadly substance.

How a statute is interpreted is a question of law reviewed de novo. In re Marriage of Rogers, 213 Ill. 2d 129, 135-36, 820 N.E.2d 386, 389-90 (2004). In this case, the trial court was not specifically asked to interpret the statute on possession of a deadly substance as defendant's strategy at trial was to argue the State did not prove anhydrous ammonia was a deadly substance.

Defendant relies on People v. Qualls, 365 Ill. App. 3d 1015, 851 N.E.2d 767 (2006), to support his argument. In Qualls, the Fifth District held anhydrous ammonia is not a "poisonous gas" for purposes of section 20.5-6 of the Code and reversed the defendant's conviction. Qualls, 365 Ill. App. 3d at 1021, 851 N.E.2d at 772. The State argues Qualls was wrongly decided and should not be followed. We disagree and find Qualls to be correctly decided.

In Qualls, the defendant was charged solely with possession of a deadly substance when his truck went in a ditch after the anhydrous ammonia he was transporting in a pitcher spilled while driving. Qualls, 365 Ill. App. 3d at 1017, 851 N.E.2d at 769. The defendant filed a motion to dismiss, arguing "'anhydrous ammonia was not intended by the legislature to be a deadly substance under the Possession of a Deadly Substance statute.'" Qualls, 365 Ill. App. 3d at 1018, 851 N.E.2d at 769. The trial court denied the motion and the case proceeded to a stipulated bench trial. Qualls, 365 Ill. App. 3d at 1018, 851

N.E.2d at 769.  The trial court found the defendant guilty.  He appealed, and the only issue on appeal was whether anhydrous ammonia is a "poisonous gas" as the term is used in section 20.5-6(a) of the Code.  Qualls, 365 Ill. App. 3d at 1018, 851 N.E.2d at 770.

The defendant argued the term "poisonous gas" should be interpreted to mean gas designed to kill or injure or tending to kill or injure "in normal use," such as sarin gas or mustard gas. Qualls, 365 Ill. App. 3d at 1019, 851 N.E.2d at 770.  He argued the term should not be read to include gases merely deadly or injurious "in particular unsafe circumstances," such as anhydrous ammonia or carbon monoxide.  Qualls, 365 Ill. App. 3d at 1019, 851 N.E.2d at 770.  The State argued the term should be broadly interpreted to mean any gas "capable of causing death or severe injury."  Qualls, 365 Ill. App. 3d at 1019, 851 N.E.2d at 770. These are essentially the same arguments raised in this case.

As noted in Qualls, 365 Ill. App. 3d at 1019, 851 N.E.2d at 770, the primary objective in construing the meaning of a disputed statute is "to ascertain and give effect to the intent of the legislature."  People v. Robinson, 172 Ill. 2d 452, 457, 667 N.E.2d 1305, 1307 (1996).  All rules of statutory construction are subordinate to this cardinal principle.  In re Detention of Powell, 217 Ill. 2d 123, 135, 839 N.E.2d 1008, 1015 (2005). "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning."  In re R.L.S., 218 Ill. 2d 428, 433, 844 N.E.2d 22, 26 (2006).  "A statute is

ambiguous if it permits more than one reasonable interpretation." *People v. Robinson*, 217 Ill. 2d 43, 55, 838 N.E.2d 930, 937 (2005).

The *Qualls* court noted the term "poisonous gas" is not defined in section 20.5-6 or otherwise under Illinois law. Therefore, a dictionary may be consulted. *Qualls*, 365 Ill. App. 3d at 1019, 851 N.E.2d at 770-71; see *People v. Collins*, 214 Ill. 2d 206, 214-15, 824 N.E.2d 262, 266 (2005).

The *Qualls* court consulted the Webster's Third New International Dictionary and found something is "poisonous" if it "'is poison'" or "'has the qualities or effects of poison.'" *Qualls*, 365 Ill. App. 3d at 1019, 851 N.E.2d at 771, quoting Webster's Third New International Dictionary 1751 (1993). "Poison" means "a substance (as a drug) that in suitable quantities has properties harmful or fatal to an organism when it is brought into contact with or absorbed by the organism." Webster's Third New International Dictionary 1751 (1993). "Poison gas" is defined as "a poisonous gas or a liquid or solid giving off poisonous vapors designed (as in chemical warfare) to kill, injure, or disable by inhalation or contact." Webster's Third New International Dictionary 1751 (1993).

Using these definitions, the term "poisonous gas" could reasonably be construed to mean either a gas "designed (as in chemical warfare) to kill, injure, or disable by inhalation or contact" or a gas that "in suitable quantities has properties harmful or fatal to an organism when it is brought into contact

- 8 -

with or absorbed by the organism."  Thus, as the term is used in section 20.5-6, it is ambiguous.  Qualls, 365 Ill. App. 3d at 1020, 851 N.E.2d at 771.  Because it is ambiguous, the purpose of the law, the evils it was intended to remedy, and the legislative history behind it must be considered.  Stroger v. Regional Transportation Authority, 201 Ill. 2d 508, 524, 778 N.E.2d 683, 693 (2002).  Where a statute is ambiguous, the rule penal statutes should be construed to afford lenity to the accused applies.  People v. Roberts, 214 Ill. 2d 106, 118, 824 N.E.2d 250, 257 (2005).

The Qualls court also applied the doctrine of noscitur a sociis.  This phrase means a word is known by the company it keeps.  Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307, 6 L. Ed. 2d 859, 863, 81 S. Ct. 1579, 1582 (1961).  Applying this doctrine, the meaning of ambiguous words in a statute may be ascertained by reference to the meaning of words or phrases associated with it and the doctrine is relied on to avoid (1) ascribing to one word a meaning so broad it is inconsistent with accompanying words and (2) giving unintended breadth to a legislative act.  As the Qualls court noted, the term "poisonous gas" appears in conjunction with the terms "deadly substance" and "deadly biological or chemical contaminant or agent," thus indicating the term "poisonous gas" is intended to mean an inherently deadly or injurious gas, as opposed to a potentially deadly or injurious gas.  Qualls, 365 Ill. App. 3d at 1020, 851 N.E.2d at 771.

A review of the legislative intent when the statute was

being debated supports this conclusion. In the Senate, the bill was touted as an "anticrime initiative" aimed at terrorism. 91st Ill. Gen. Assem., Senate Proceedings, March 25, 1999, at 106 (statements of Senator Dillard). During later proceedings before the Criminal Law Judiciary Committee of the House of Representatives, it was noted the statute was necessary because Illinois had no law criminalizing possession of "biological warfare chemicals" or "poison gas" such as "sarin gas." 91st Ill. Gen. Assem., House Proceedings, April 22, 1999, Judiciary II Committee Hearing (taped debate on Senate Bill 509). Thus, we agree with the Qualls court; that is, the legislative history "reveals the statute was enacted to criminalize the unlawful possession of inherently deadly or injurious substances, such as gases designed, as in chemical warfare, to kill or injure." Qualls, 365 Ill. App. 3d at 1021, 851 N.E.2d at 771-72.

Finally, "[i]n determining the intention of the General Assembly ***, it is permissible to look to later actions of the legislature." Gregory v. County of LaSalle, 91 Ill. App. 2d 290, 297, 234 N.E.2d 66, 70 (1968). On September 11, 2005, section 25 of the Methamphetamine Control and Community Protection Act (the Act) (720 ILCS 646/25 (West Supp. 2005)) became law. Under section 25 of the Act, it is an offense to possess, procure, transport, store, or deliver anhydrous ammonia with intent it be used to manufacture methamphetamine. 720 ILCS 646/25(a) (West Supp. 2005). This is a Class 1 offense or Class X if aggravated circumstances exist. 720 ILCS 646/25(a)(2), (b)(2) (West Supp.

- 10 -

2005). This law specifically prohibits the possession, procurement, transportation, storage or delivery of anhydrous ammonia with the intent it be used to manufacture methamphetamine. Therefore, it supports the conclusion the term "poisonous gas" in section 20.5-6 of the Code was not meant to include anhydrous ammonia.

We find, as did the court in Qualls, the State's interpretation of the term "poisonous gas" in section 20.5-6 of the Code is contradicted by the statute's legislative history and, if followed, would give the statute unintended breadth. Anhydrous ammonia is not a "poisonous gas" for purposes of section 20.5-6 of the Code. As proving defendant possessed a poisonous gas is an essential element of the charge, the State did not prove him guilty beyond a reasonable doubt of the offense of possession of a deadly substance. We accordingly reverse defendant's conviction of that offense.

B. Excessive Sentences

Defendant next argues his prison sentences are excessive in light of his lack of a prior felony record, his alleged "very high" rehabilitative potential, and the nature of his offenses.

Where sentences chosen by a trial court are statutorily authorized, a reviewing court has the power to disturb the sentences only if the trial court abused its discretion. See People v. Jones, 168 Ill. 2d 367, 373-74, 659 N.E.2d 1306, 1308 (1995). However, a sentence not conforming to a statutory requirement is

- 11 -

void and may be corrected at any time. People v. Pippen, 324 Ill. App. 3d 649, 653, 756 N.E.2d 474, 478 (2001).

The trial court, in sentencing defendant to a total of 26 years in prison, believed "concurrent sentences of sufficient length" were "the best means of protecting the public" from defendant's criminal conduct. However, the trial court also noted the offenses in Nos. 03-CF-171 and 04-CF-84 were each committed while out on bond from either No. 03-CF-165 or both Nos. 03-CF-165 and 03-CF-171, respectively. The trial court did not acknowledge section 5-8-4(h) of the Unified Code of Corrections (Unified Code) requires sentences for felonies be served consecutively if the felonies are committed while on pretrial release for a separate felony. 730 ILCS 5/5-8-4(h) (West 2004).

Where sentences are mandatorily consecutive and the defendant is sentenced to concurrent sentences, the sentences are void and the remedy is to remand for imposition of consecutive sentences. People v. Harris, 203 Ill. 2d 111, 121, 784 N.E.2d 792, 798 (2003). When a trial court's decision to impose concurrent prison terms is deemed void, the appellate court has the authority to correct the sentence and the appellate court is not barred from doing so by supreme court rules limiting the State's right to appeal or prohibiting the appellate court from increasing a defendant's sentence. People v. Arna, 168 Ill. 2d 107, 113, 658 N.E.2d 445, 448 (1995). Thus, we can, if we so desire, remand  simply for the trial court to amend its sentencing order to make sentences already given consecutive. People v. Karmatzis,

373 Ill. App. 3d 714, 719, 871 N.E.2d 118, 122 (2007) (Fourth District).  However, we can also do as the supreme court did in Arna when it affirmed the appellate court decision to remand for a determination of the "'appropriate sentences to be imposed consecutively.'"  Arna, 168 Ill. 2d at 111-12, 115, 658 N.E.2d at 448, 449.

Defendant here was subject to mandatory consecutive sentences but instead received concurrent sentences; thus, the sentences are void.  Because they are void, we do not consider defendant's arguments as to their excessiveness.  Further, we will not remand the cases here simply for amending the sentencing order to make the remaining sentences consecutive.  The trial court, in sentencing defendant to concurrent terms of 26 years, relied upon his conviction for possession of a deadly substance in case No. 03-CF-171; and we have reversed that conviction, and with it, the 26-year prison term to which defendant was sentenced.  We deem it appropriate to remand for a new sentencing hearing on the remaining convictions, the sentences to be served consecutively.

As noted by defendant, however, this case presents an additional wrinkle.  Defendant entered a guilty plea in No. 04-CF-84 and was not admonished at the guilty-plea hearing he was subject to mandatory consecutive sentencing because the offense occurred while on pretrial release for Nos. 03-CF-165 and 03-CF-171.  Defendant also notes he was not admonished as to consecutive sentences when he entered his guilty plea in case No. 03-CF-

- 13 -

165.  However, he is not subject to a mandatory consecutive sentence on his conviction in No. 03-CF-165 as he was not on pretrial release when he committed the offense.

Illinois Supreme Court Rule 402(a) provides a guilty plea shall not be accepted without the trial court first informing a defendant of minimum and maximum sentences prescribed by law, including, where applicable, any penalty to which he may be subject due to consecutive sentences.  177 Ill. 2d R. 402(a).  Where a trial court fails to advise a defendant his sentences are mandatorily consecutive, his plea is involuntary.  People v. McCracken, 237 Ill. App. 3d 519, 521-22, 604 N.E.2d 1104, 1106 (1992).  Informing a defendant merely of the possibility of consecutive sentences when they are mandatory is an inadequate admonishment under Rule 402(a) and "the defendant should be allowed to withdraw his guilty plea and plead anew."  People v. Dorethy, 331 Ill. App. 3d 504, 507, 771 N.E.2d 609, 611 (2002).

Defendant did not raise this issue in his motion to withdraw guilty plea in the trial court, and generally, any issue not raised in a defendant's motion to withdraw guilty plea shall be deemed waived on appeal (210 Ill. 2d R. 604(d)).  However, a sentence not conforming to statutory requirements is void (Arna, 168 Ill. 2d at 113, 658 N.E.2d at 448) and may be challenged at any time (People v. Malchow, 306 Ill. App. 3d 665, 675-76, 714 N.E.2d 583, 591 (1999)).  In addition, where a trial court "fails to give a defendant the admonishments required by Rule 402, it may constitute plain error, an exception to the waiver rule."

McCracken, 237 Ill. App. 3d at 520, 604 N.E.2d at 1105; 134 Ill. 2d R. 615.

We find the failure to admonish defendant he was subject to mandatory consecutive sentences at the guilty-plea hearing in case No. 04-CF-84 to be plain error and his guilty plea not voluntary. Thus, taking all the sentencing issues together, case Nos. 03-CF-165 and 04-CF-84 should be remanded for new sentencing hearings but defendant also should be allowed the opportunity to withdraw his guilty plea in case No. 04-CF-84.

C. Disbursement of Bond Money

Finally, defendant contests the trial court's order for the balance of posted bond money after reimbursement for public-defender fees and lab costs to go to the Clark County sheriff's office and the Southeast Illinois Drug Task Force. The court stated it thought this was appropriate because the sheriff's department and task force spent large amounts of time and great sums of money pursuing defendant and others as a result of defendant's criminal conduct. At sentencing, defense counsel expressly acquiesced in this distribution of the bond money.

Defendant now argues the trial court did not state its authority to distribute the bond money in this way and defendant has not found any statute allowing the court to make such a disbursement when a defendant is sentenced to prison. Sections 5-6-3(b)(12) and 5-6-3.1(c)(12) of the Unified Code provide for the imposition of fines for the purpose of reimbursing local anti-crime programs (730 ILCS 5/5-6-3(b)(12), 5-6-3.1(c)(12)

- 15 -

(West 2004)) but these provisions apply to conditions of probation, conditional discharge, and supervision. "No similar provisions authorize imposition of [these] fine[s] when a sentence of incarceration is imposed." People v. Beler, 327 Ill. App. 3d 829, 837, 763 N.E.2d 925, 931 (2002). Defendant contends the portion of his bond money ordered to the sheriff's department and the drug task force should be vacated and the money refunded to defendant.

Defendant is mistaken in considering the sums at issue to remain part of posted bond money. On August 16, 2004, defendant failed to appear for pretrial hearing in both Nos. 03-CF-165 and 04-CF-84, and the trial court issued an arrest warrant. The court ordered his bond to be forfeited in both cases. A hearing was set on the forfeiture, and defendant failed to appear. On September 22, 2004, the trial court entered a forfeiture judgment but ordered the clerk not to distribute the funds until further order.

At the hearing on defendant's posttrial motion, the trial court noted it ordered distribution of the money previously forfeited and added defendant had never challenged the bond forfeiture "and is not challenging it here." The court concluded defendant lacked standing to challenge the distribution of the money.

Defendant also mischaracterizes the trial court's order as an unauthorized fine. The court did not order defendant to pay these agencies. Instead, the court distributed the forfeited

bond deposits.

Defendant is barred from objecting to the distribution of his forfeited bond money under the doctrine of standing. This doctrine ensures "only parties with a genuine interest in the outcome of a case will raise and argue its issues." In re M.T., 221 Ill. 2d 517, 528, 852 N.E.2d 792, 799 (2006). Defendant's bond had been forfeited, and he no longer had any right to the funds. A further reason defendant was not entitled to a refund of his bond was he assigned his bond rights to others. Defendant was not entitled to a refund of funds already forfeited and assigned and, thus, he had no real interest in where these forfeited funds were distributed. Because the bonds had been forfeited, vacating the trial court's order for distribution would simply result in a transfer of the remaining funds to the Clark County treasury. See 725 ILCS 5/110-7(g) (West 2004).

### III. CONCLUSION

For the foregoing reasons, we (1) reverse defendant's conviction for possession of a deadly substance, (2) reverse defendant's conviction and sentence for unlawful possession of a stolen vehicle so defendant may be afforded the opportunity to withdraw his guilty plea and plead anew (after being admonished under Rules 605(b)(3) and (b)(4), for example, that any charges will be reinstated and set for trial (210 Ill. 2d Rs. 605(b)(3), (b)(4))) and for resentencing; and (3) affirm defendant's conviction in No. 03-CF-0165 for unlawful manufacture of a controlled substance but reverse his sentence therein and remand for a new

- 17 -

sentencing hearing on that conviction and any ensuing conviction in No. 04-CF-84.

No. 4-07-0032, Reversed.

No. 4-07-0033, Reversed and remanded with directions.

No. 4-07-0034, Affirmed in part, reversed in part, and remanded with directions.

STEIGMANN, J., concurs.

MYERSCOUGH, J., specially concurs in part and dissents in part.

JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I concur in the majority's resolution of Nos. 4-07-0033 and 4-07-0034.

However, with respect to the majority's resolution of No. 4-07-0032, I respectfully dissent. I would affirm the trial court in its entirety on the conviction and sentence for possession of a deadly substance. The majority and the Qualls court erroneously find the statute ambiguous because the term "poisonous gas" has two definitions. Such an interpretation of ambiguity would necessarily render all statutes ambiguous. Nearly every word in Webster's has at least two meanings.

There is no need here to apply the rule of noscitur a sociis. The meaning of the statute here is clear yet ignored by the majority and the Qualls court. Possession of any poisonous gas with intent to commit a felony is illegal and a Class 1 felony, whether that gas was designed to kill or be harmful in quantity on contact. The use of the term "any" denotes a broad category of gases, not a narrow category limited only to "designer gases." The majority unreasonably reads the statute narrowly, excluding other deadly toxic gases--not only anhydrous ammonia, but others such as chlorine, gasoline, and propane.

Anhydrous ammonia is not only fatal in suitable quantities but is the precursor to ammonium nitrate, also a fertilizer, which along with fuel oil. exploded the Murrah Building in Oklahoma City in April 1995. Moreover, chlorine was largely used

- 19 -

as a weapon in World War I.  See D. Cave & A. Fadam, <u>Iraqi Mili-</u>
<u>tants Use Chlorine in 3 Bombings</u>, N.Y. Times, February 21, 2007,
<u>available</u> <u>at</u>
http://www.nytimes.com/2007/02/21/world/middleeast/21cnd-
baghdad.html (last visited January 31, 2008).  More recently,
terrorists in Iraq have relied on small bombs to set off chlorine
tanker trucks. See D. Cave & A. Fadam, <u>Iraqi Militants Use Chlo-</u>
<u>rine in 3 Bombings</u>, N.Y. Times, February 21, 2007, <u>available</u> <u>at</u>
http://www.nytimes.com/2007/02/21/world/middleeast/21cnd-
baghdad.html (last visited January 31, 2008).

The majority and the <u>Qualls</u> court mistakenly exclude
potentially deadly or injurious gases because the words "any
poisonous gases" appears in proximity to "deadly substance" and
"deadly biological or chemical contaminant or agent."  720 ILCS
5/20.5-6 (West 2002).  However, "deadly substance" is actually
defined as a number of categories of poison, including "any
poisonous gas" <u>and</u> "deadly biological or chemical contaminant or
agent."  Certainly, then, the poisonous gas must be deadly.  But
the mere fact "poisonous gas" is included in a series of other
deadly substances does not reflect a legislative intent to ex-
clude potentially deadly gases.  Nowhere in the statute is there
any language to include only inherently but not potentially
poisonous gases.

Finally, the fact that the legislature subsequently
passed a law to address the methamphetamine explosion does noth-
ing to affect the crime of possession of a deadly substance.  The

- 20 -

majority and the Qualls court in reality focus on the felony for which the poisonous gas was to be used.  In essence, since Davison was going to manufacture methamphetamine and not commit what is ordinarily defined as "an act of terror," the majority excludes this crime.  However, the legislature did not do so.  We must give effect to the plain language of the statute.  If this is not what the legislature intended, it can amend the statute. Such is not our role.

Since the State met its burden, I would affirm.