NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2019 IL App (4th) 170754-U

NO. 4-17-0754

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 5, 2019
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| SARAH R. MELLOR, | ) | No. 16CF166 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Michael L. Stroh, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The sentence of 8 years' imprisonment for second-degree murder (720 ILCS 5/9-2(a)(2) (West 2016)) was no abuse of discretion: The considerable mitigating factors pushed the sentence down to 12 years below the maximum prison term, and a reasonable person could take the view that the seriousness of the offense and the need for deterrence warranted a prison term 4 years above the minimum.

¶ 2    Defendant, Sarah R. Mellor, pleaded guilty to the second-degree murder (720 ILCS 5/9-2(a)(2) (West 2016)) of her husband, Mark Mellor. The plea was open—that is, there was no agreement as to the sentence—and the circuit court of Woodford County sentenced defendant to eight years' imprisonment. She appeals, arguing the court abused its discretion by considering two aggravating factors which were inapplicable to her case and which, besides, were substantially outweighed by the mitigating factors.

¶ 3    The first of the two aggravating factors to which defendant refers, serious harm (730 ILCS 5/5-5-3.2(a)(1) (West 2016)), was indeed inapplicable to her case since serious harm

was already inherent in murder. Nevertheless, defense counsel, in her argument in the sentencing hearing, invited consideration of serious harm as an aggravating factor. Invited error aside, the circuit court, in denying defendant's motion to reduce the sentence, explicitly withdrew its consideration of serious harm as an aggravating factor. When making that revision to its sentencing rationale, the court remarked that it had given little or no weight to serious harm to begin with, having mentioned serious harm only once in the sentencing hearing.

¶ 4　　　　The other aggravating factor to which defendant refers, the need for deterrence (*id.* § 5-5-3.2(a)(7)), could, contrary to her argument, be regarded as applicable to her case. When the need for deterrence and the seriousness of the offense are weighed against the mitigating factors, we are unable to characterize eight years' imprisonment as an unreasonable and arbitrary punishment. See *People v. Ortega*, 209 Ill. 2d 354, 359 (2004); *People v. Streit*, 142 Ill. 2d 13, 19 (1991). It is true that the mitigating factors in defendant's case are substantial, but they are reflected in a prison sentence that is substantially below—specifically, 12 years below—the maximum. Therefore, we affirm the judgment.

¶ 5　　　　　　　　　　　　　I. BACKGROUND

¶ 6　　　　　　　　　　　　　A. The Guilty Plea

¶ 7　　　　Initially, the State charged defendant with two counts of first-degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2016)). On May 15, 2017, in return for the dismissal of those counts, defendant pleaded guilty to a newly filed count of second-degree murder (*id.* § 9-2(a)(2)). The new count alleged that on October 15, 2016, "while committing First Degree Murder [(*id.* § 9-1(a)(2))], [defendant] knowingly killed Mark Mellor by stabbing him with a knife and that at the time of the killing[,] she believed the circumstances to be such that, if they existed, would justify or exonerate

- 2 -

the killing, but her belief was unreasonable." The circuit court accepted her guilty plea to this new charge of unreasonable-belief murder.

¶ 8        The sentence for second-degree murder could be, as the circuit court admonished defendant, "the minimum, which [was] probation up to four years, all the way up to the maximum, which [was] 20 years in the Illinois Department of Corrections." See 730 ILCS 5/5-4.5-30(a), 5-5-3(c)(2) (West 2016).

¶ 9                              B. The Sentencing Hearing

¶ 10        On July 18, 2017, there was a sentencing hearing, in which the evidence tended to show the following.

¶ 11        Mark Mellor, defendant's husband, was an animal control officer for Bloomington, Illinois. He was assigned to the night shift, and the job took a terrible psychological toll on him. He received calls at all hours of the night. Armed with only a pole and noose, he had to respond to dog attacks, some of which were horrible and gruesome. The job was ugly and dangerous, and it put him under great stress. He became chronically sleep-deprived. Upon receiving calls in the middle of the night, he would explode: He would curse and punch holes in the walls before storming out of the house. He had not always been like that. The job changed him; he was like someone in emotional crisis and always on edge. He and defendant argued fiercely, nose to nose, sometimes over trivia that could be looked up on the computer. As Marty Kelch, defendant's father, put it, they knew how to push one another's buttons.

¶ 12        Once, some 2 ½ years before the sentencing hearing, when Mark Mellor was late getting home, defendant screamed down at him from the top of the stairs that she was going to shoot him with the shotgun they kept by their bed. But she did not shoot him. In fact, on one

occasion she saved his life: He fell through some ice, and she saved him from drowning by picking up a railroad tie and carrying it to him on her shoulder.

¶ 13    In short, although their relationship was tempestuous, they by all accounts loved one another and were devoted to one another. It was largely owing to defendant's support and encouragement that Mark Mellor pressed on with his college education. She patched the holes he punched in walls. She was longsuffering and unwilling to give up on him; she was determined to help him get through. And they had some fun times, too—for example, they went hiking together in Alaska and the Amazon.

¶ 14    One of the things they did together, to help Mark Mellor relax, was spending weekends at a campground near Carlock, Illinois, in Woodford County, on river land owned by the Buskicks. During one of these weekend campouts, on Sunday, October 16, 2016, defendant and Mark Mellor got into an altercation.

¶ 15    It happened this way. Defendant was in Carrie Buskick's camper with her and her four-year-old grandson, Hunter. Mark Mellor walked by outside, and through the open doorway caught a glimpse of defendant taking a drag on a cigarette. He entered the camper and said to defendant, "I thought if we were going to do things like that, we would tell each other." He had a plastic Solo cup in his hand and threw it against an interior wall of the camper. The drink splattered on Carrie Buskick and Hunter. Then Mark Mellor turned and exited the camper, and defendant immediately followed. Within minutes, Carrie Buskick heard defendant crying out to Robert Buskick, "Uncle Bob, Uncle Bob, call 911!" and then defendant saying, "She stabbed me."

¶ 16    The only witnesses to the stabbing were defendant and Mark Mellor. Also, apparently, they were the only witnesses to some menacing behavior by Mark Mellor that preceded the stabbing. According to defendant, Mark Mellor had been acting aggressively toward her while

they were at the campground that weekend. The day before, on Saturday, while just the two of them were out canoeing on the Mackinaw River, Mark Mellor told defendant, "They are going to find your body down the river." Also, that weekend at the campground, he had pressed a pillow over her face, as if to smother her.

¶ 17        Defendant decided she had had enough when Mark Mellor threw the cup against the wall of the Buskicks' camper. She came out of the camper, intending to run the 20-odd miles back home. (She had run home from the campground before; she was a marathon runner.) But defendant intercepted her.

¶ 18        One of the features of Mark Mellor's emotionally disturbed condition, as defendant described it, was that he was very controlling of her; he was terrified at the prospect of her leaving. Now, as she was about to set out for home, he blocked her in against the wall of a trailer, placing his hands on the trailer behind her, to her left and her right—not touching her, as of yet, but just blocking her in—and he told her he would kill her and call it a boating accident. That is when defendant pulled a hunting knife (which she habitually carried on her person for protection ever since, a couple of years earlier, a man, a stranger, beat her outside her home in west Bloomington and put her in the hospital with severe facial injuries). When defendant pulled the knife, Mark Mellor grabbed her by the wrists, raised her hands above her head, and pinned them against the trailer. Then, still grasping her knife hand, he brought it down until the blade was near her throat. And then he let go. When he let go, defendant plunged the knife diagonally downward into his chest. The blade made a wound four and a half inches deep, puncturing the heart, spleen, and liver.

¶ 19        The campers, who had come running in response to defendant's cries to call 911, decided that, instead of waiting for an ambulance to find its way to this isolated area, it would be best to drive Mark Mellor immediately to the hospital. Defendant helped Mark Mellor into Robert

Buskick's pickup truck, and she took the wheel. Surveillance footage from the hospital in Bloomington showed the truck arriving at a fast clip and defendant helping Mark Mellor out of the truck in great haste. She was weeping and distraught.

¶ 20 Mark Mellor died in the hospital. Defendant gave a statement to the police, describing how she had stabbed him. She was charged with first-degree murder.

¶ 21 Defendant had no previous criminal record, and in fact she had been an exemplary citizen. She was a high-school Spanish teacher who cared about her students and put in a lot more time and work for them than her job required. She provided free translation services and practical guidance to Spanish speakers who did not know English. She was lavish in her volunteer work for a local running club. Even in jail, she was helpful and kind to others, and her behavior was irreproachable. It was universally agreed—even by Mark Mellor's mother, Jerri Andrew—that defendant was, as the circuit court found, "a good person" who in extremely trying circumstances had a 30-second lapse. Arguing that this tragic sliver of time should not define defendant, Andrew urged the court to "be lenient yet as fair as possible and not let this circumstance destroy yet another young person's life."

¶ 22 C. Defense Counsel's Argument on the Aggravating Factors

¶ 23 Defense counsel argued that the mitigating factors in this case "far outweighed" the aggravating factors, of which, in her view, there were only two:

> "The two aggravating factors that could possibly be applied in this case, there was causation of harm. That's not in question. The second aggravating factor being that a prison sentence is necessary to deter others. That, Your Honor, I have substantial grounds to contest. Necessary to deter what, Your Honor? That is—as I said earlier, this is not a woman who acted out of rage. She didn't act out of malice."

¶ 24        D. The Circuit Court's Discussion of the Mitigating and Aggravating Factors

¶ 25        The circuit court, "in looking at the factors in mitigation and aggravation referenced by both counsel in their arguments," found six factors in mitigation: (1) defendant acted under a strong provocation (see *id.* § 5-5-3.1(a)(3)); (2) there were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense (see *id.* § 5-5-3.1(a)(4)); (3) defendant had no history of prior criminal activity (see *id.* § 5-5-3.1(a)(7)); (4) defendant's criminal conduct was the result of circumstances unlikely to recur (see *id.* § 5-5-3.1(a)(8)); (5) the character and attitudes of defendant indicated she was unlikely to commit another crime (see *id.* § 5-5-3.1(a)(9)); and (6) defendant was particularly likely to comply with the terms of a period of probation (see *id.* § 5-5-3.1(a)(10)).

¶ 26        Of those six factors in mitigation, the first two, in the circuit court's view, came down to the same thing: "the history of this relationship leading up to this night." The relationship was "troubled" and "stressful." Living with someone who frequently was so agitated he punched holes in walls and doors and flew into a rage over the smallest things, including defendant's taking a drag off a cigarette (even though he himself, hypocritically, was a regular smoker of cannabis), had to be very trying. No one could easily endure being unlawfully restrained, either:

> "[H]e did put her into a position against the trailer that made it difficult for her to move away. He was not wanting her to leave. As a result of his act she pulls a knife on him. Seeing the knife he then moves to defend himself, and a struggle ensues, at which point somewhere down the line he lets go. And when he lets go she plunges the knife deep in his chest and forever changes the course of history for herself and many of the people that are sitting in this room today. Did she act under serious

provocation? Yes, she did. But did it rise to the level that would be a defense to the crime of murder? No."

¶ 27        Next, after discussing the mitigating factors, the circuit court found two factors in aggravation: "Looking at the factors in aggravation that apply, obviously the defendant's conduct caused serious harm, death to Mark Mellor. Also, court finds that a sentence is necessary to deter others from committing the same crime." See *id.* § 5-5-3.2(a)(1), (7). These were in addition to a non-statutory factor in aggravation that the court discussed earlier: "But we've also been told, People v. Gutierrez, 402 Ill. App. 3d 866, 'The seriousness of a crime committed is considered the most important factor in fashioning an appropriate sentence.' "

¶ 28        Again, before announcing the sentence, the court reemphasized the seriousness of the crime:

> "But even though I have made these findings today, I do find that the seriousness of the crime committed is such an important factor that any sentence other than the Illinois Department of Corrections, having consideration for your history, character, and condition, and the circumstances of this offense, would be inconsistent with the ends of justice, and that probation would deprecate the seriousness of your conduct.
>
>         Sentencing range is 4 to 20 years. The mitigating factors dictate to me that a sentence towards the maximum is not the appropriate disposition here. Therefore, the court is sentencing you to eight years in the Illinois Department of Corrections."

¶ 29                E. Defendant's Motion to Reduce the Sentence

¶ 30        On August 3, 2017, defendant filed a motion to reduce the sentence. One of her reasons for the requested reduction was as follows:

"7. As to factors in aggravation, this court found that Defendant's conduct caused or threatened serious harm and also that a sentence was necessary to deter others from committing the same crime. The court further noted that greater weight was to be given in the need to deter.

8. The charge of second degree murder necessarily involves serious harm and therefore the first factor in aggravation should not be considered in the court's sentence."

¶ 31    On October 3, 2017, the circuit court held a hearing on defendant's motion to reduce the sentence. In denying the motion, the court acknowledged that because the victim's death was an inherent element of second-degree murder, consideration of "serious harm" was an impermissible double enhancement. See *id.* § 5-5-3.2(a)(1). The court noted, however, that, in the sentencing hearing, it "spent very little time on mentioning the death of Mark Mellor": The court "only mentioned that factor in one sentence in that entire sentencing hearing." The "theme" of the sentencing hearing—what the court emphasized therein—was "the seriousness of the defendant's conduct," which was "the most important factor in fashioning a sentence." The offense in this case was serious, and undue force in domestic altercations had to be deterred. So, while now explicitly "withdrawing" its consideration of "serious physical harm," the court reaffirmed its belief that eight years' imprisonment was the appropriate sentence.

¶ 32    This appeal followed.

¶ 33                                II. ANALYSIS

¶ 34            A. The Invalid Aggravating Factor of Serious Harm

¶ 35                            1. *Invited Error*

¶ 36    Defendant complains that when deciding her sentence, the circuit court counted, as an aggravating factor, the victim's death. "Looking at the factors in aggravation that apply," the court said, "obviously the defendant's conduct caused serious harm." But any murder, defendant observes, is a serious harm—the most serious harm of all. The victim's death was inherent in the offense, and, thus, it made no sense to treat that death as an *aggravation*, or worsening, of the offense. See *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009).

¶ 37    The State agrees: An inherent element of an offense cannot logically serve as a reason to impose a more severe sentence than might otherwise have been imposed. See *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). And yet, the State notes, defense counsel told the circuit court, in the sentencing hearing, that one of "[t]he two aggravating factors that could possibly be applied in this case" was "causation of harm." The court followed defense counsel's lead, saying it was "looking at the factors in mitigation and aggravation as referenced by both counsel in their arguments." One of the possible factors in aggravation referenced by defense counsel was causation of harm, and, accordingly, the court observed that "the defendant's conduct caused serious harm." Irrelevant as that observation was in a discussion of what aggravated the crime of second-degree murder, the error, the State argues, "was invited." "Defendant may not be heard to complain of error he invited." *People v. Brooks*, 251 Ill. App. 3d 927, 933 (1993).

¶ 38    To this contention of invited error, defendant's response is essentially twofold.

¶ 39    First, defendant argues the State has forfeited this contention by failing to "cite to the record to show where defense counsel told the court that serious harm to Mark [Mellor] was a proper aggravating factor." But the State does provide such a citation to the record: The State cites the page of the sentencing hearing transcript on which defense counsel said the following to the circuit court: "The two aggravating factors that could possibly be applied in this case, there was

causation of harm. That's not in question. The second aggravating factor being that a prison sentence is necessary to deter others. That, Your Honor, I have substantial grounds to contest." We do not know how to understand the first sentence other than as a statement that "causation of harm" is an "aggravating factor[ ] that could possibly be applied in this case."

¶ 40    Second, defendant argues that even if, by her remarks in the sentencing hearing, defense counsel invited the error, the State has forfeited its theory of invited error by failing to raise that theory in the hearing on defendant's motion to reconsider the sentence. In support of her claim of procedural forfeiture, defendant cites two cases. In the first case, the supreme court did indeed hold that "[t]he principle of waiver" (or, more accurately, forfeiture) "applies as equally to the State as it does to a defendant in a criminal matter." *People v. Hawkins*, 181 Ill. 2d 41, 54 (1998). In *Hawkins*, however, the State was the appellant (*id.* at 44), whereas in the present case the State is the appellee. "An appellee may raise any argument in support of the trial court's judgment, even if the argument was not raised before the trial court, provided the argument has a sufficient factual basis in the record." *People v. Coyne*, 2014 IL App (1st) 123105, ¶ 20. The argument of invited error, as we have found, has a sufficient factual basis in the record—and, thus, it is an argument that the State, as the appellee, may now raise. See *id.*

¶ 41    It is true that the State was the appellee in the other case that defendant cites, *People v. Hancock*, 2014 IL App (4th) 131069, but in *Hancock* the appellate court held that the State had forfeited the defendant's procedural forfeiture by omitting to raise that forfeiture *on appeal* (*id.* ¶ 124). By contrast, on appeal in the present case, the State does raise invited error.

¶ 42    Admittedly, the circuit court never raised invited error. Instead, in the hearing on defendant's motion to reconsider the sentence, the court acknowledged the error of considering the victim's death as an aggravating factor, took back the error, and explained why the sentence

- 11 -

should remain the same: because, all along, instead of serious harm, the important factor in the court's sentencing decision was the seriousness of the offense or, in other words, the harm done in causing the victim's death (see *People v. Floyd*, 160 Ill. App. 3d 80, 87-88 (1987); *People v. Montague*, 149 Ill. App. 3d 332, 347 (1986)).

¶ 43 We will discuss that rationale in a moment, but the first thing to keep in mind is that just because the circuit court excused the invited error, it does not follow that we ought to do so. We may affirm the judgment on any basis supported by the record, regardless of the circuit court's reasoning. See *People v. Lee*, 2016 IL App (2d) 150359, ¶ 14. This is not to say the circuit court's reasoning is wrong. Rather, this is to say it would not have been unreasonable or arbitrary— it would not have been an abuse of discretion (see *People v. Donoho*, 204 Ill. 2d 159, 182 (2003); *People v. Reyes*, 338 Ill. App. 3d 619, 621 (2003))—to have held that consideration of the invalid aggravating factor was invited in the sentencing hearing and that, consequently, in the postsentencing hearing, it was invulnerable to objection (see *Brooks*, 251 Ill. App. 3d at 933). After giving the court bad advice in the sentencing hearing, defendant was in no position, in the postsentencing hearing, to blame the court for having followed her advice. See *id.* That principle of fair dealing and straight talking is part of *our own* rationale for affirmance (as we look for valid reasons for affirmance, as we should do), even though it was not a rationale the circuit court chose. See *Lee*, 2016 IL App (2d) 150359, ¶ 14.

¶ 44 2. *Harmlessness*

¶ 45 The State points out that, invited error aside, the circuit court said in the postsentencing hearing that (1) it was withdrawing consideration of serious harm as an aggravating factor and (2) it never gave much significance to that factor in the first place. See *Floyd*, 160 Ill. App. 3d at 87-88; *Montague*, 149 Ill. App. 3d at 347.

¶ 46    Defendant responds that "[a]lthough the court did verbally withdraw its consideration of causation of harm to Mark [Mellor] as an aggravating factor at the hearing on the motion to reconsider [the] sentence, the State fails to explain how the withdrawal of this factor had no impact on the sentence, especially in light of all of the voluminous mitigating factors considered by the court in this case."

¶ 47    The answer could be that although, in the sentencing hearing, the circuit court felt a misguided obligation to mention "serious harm" since it was one of the statutory factors in aggravation (see 730 ILCS 5/5-5-3.2(a)(1) (West 2016)) and it was a factor that defense counsel had referenced, the court's mention of that factor was fleeting, *pro forma*, and of no real significance to the sentencing decision (as the court assured defendant in the postsentencing hearing) precisely because, even then, the court sensed the problem of double enhancement. That might have been why, in its oral rationale and in its analysis, the court never made much of serious harm: Logically, it never seemed compelling to the court as an aggravating factor.

¶ 48                    B. Serious Provocation as a Mitigating Factor

¶ 49    In deciding on the sentence, the circuit court found that defendant had "act[ed] under serious provocation" but that "it [did not] rise to a level that would be a defense to the crime of murder."

¶ 50    Defendant argues, however, that serious provocation (see *id.* § 5/5-5-3.1(a)(3)) "need not rise to the level of a defense to consider its mitigating value" and that declining to consider serious provocation as a mitigating factor was an abuse of discretion.

¶ 51    We do not see how serious provocation (see *id.*) and, for that matter, "substantial grounds tending to excuse or justify the defendant's criminal conduct" (*id.* § 5-5-3.1(a)(4)) could be mitigating factors at all, given the charge to which defendant pleaded guilty. Defendant pleaded

- 13 -

guilty to the theory of second-degree murder set forth in section 9-2(a)(2) of the Criminal Code of 2012 (720 ILCS 5/9-2(a)(2) (West 2016)):

> "(a) A person commits the offense of second degree murder when he or she commits the offense of first degree murder *** and either of the following mitigating factors are present:
>
> ***
>
> (2) at the time of the killing he or she believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code [(720 ILCS 5/7-1 *et seq.* (West 2016))], but his or her belief is unreasonable."

It is one thing for *A* to say, "I killed *B* because I had an honest, though, as it turns out, unreasonable, belief that killing *B* was necessary to prevent his imminent murder of me." It is quite a different thing for *A* to say, "I killed *B* because he pushed my buttons as no one had ever pushed them before and my temper got the best of me." That is what being provoked means: being "incite[d] to anger." Merriam-Webster's Collegiate Dictionary 938 (10th ed. 2000) (definition of "provoke"). The provocation explanation tends to undermine the honest-belief explanation and make it look pretextual: The real reason why *A* killed *B* was not that *A* honestly feared for her life; the real reason was that *A* was incited to anger at *B* and wanted to take revenge on him. *Cf. People v. Bailey*, 141 Ill. App. 3d 1090, 1104 (1986) ("The 'provocation' and 'unreasonable belief in the necessity of self defense' theories of voluntary manslaughter require different frames of mind that cannot both be present in the same act.").

¶ 52        We have a similar difficulty squaring the mitigating factor in section 5-5-3.1(a)(4) of the Unified Code of Corrections (730 ILCS 5/5-5-3.1(a)(4) (West 2016) ("There were

substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense.")) with the mitigating factor built into the definition of second-degree murder to which defendant pleaded guilty (see 720 ILCS 5/9-2(a)(2) (West 2016)). Again, the mitigating factor in the second-degree murder statute is this: "[A]t the time of the killing he or she believes the circumstances to be such that, if they existed, *would* justify or exonerate the killing under the principles stated in Article 7 of this Code, but his or her belief is unreasonable." (Emphasis added.) *Id.* "Would" is a subjunctive verb form, which "expresses *** conditions that are contrary to fact." Andrea Lunsford & Robert Connors, The St. Martin's Handbook 208 (1989). Thus, it is contrary to fact that the circumstances confronting defendant at the campground in October 2016 "justif[ied] or exonerate[d] the killing" of Mark Mellor. 720 ILCS 5/9-2(a)(2) (West 2016). Given that judicially admitted fact (see *Spircoff v. Stranski*, 301 Ill. App. 3d 10, 15 (1998)), one cannot coherently say that "[t]here were substantial grounds tending to excuse or justify the defendant's criminal conduct" (730 ILCS 5/5-5-3.1(a)(4) (West 2016)). Unreasonable grounds (see 720 ILCS 5/9-2(a)(2) (West 2016)) cannot be substantial grounds (see 730 ILCS 5/5-5-3.1(a)(4) (West 2016)).

¶ 53      We realize that, in its brief, the State raises no problem with applying either of these two mitigating factors (*id.* § 5-5-3.1(a)(3), (4)) to defendant's case. Even so, to persuade us that the circuit court abused its discretion by giving insufficient weight to the mitigating factors, defendant must persuade us that the mitigating factors apply to her. These two do not. We conclude, therefore, that instead of being stinting with mitigation, the court included a couple of mitigating factors in defendant's column that really did not belong there.

¶ 54      C. Circumstances Unlikely to Recur and the Need for Deterrence

- 15 -

¶ 55        The circuit court found, in mitigation, that "defendant's criminal conduct was the result of circumstances unlikely to recur" (*id.* § 5-5-3.1(a)(8)) and found, in aggravation, that sentencing defendant to eight years' imprisonment was "necessary to deter others from committing the same crime" (*id.* § 5-5-3.2(a)(7)). Defendant regards those two findings as contradictory. "[N]o reasonable person," defendant argues, "would find deterrence a significant factor where the circumstances of the offense are unlikely to recur."

¶ 56        It appears, from this argument, that defendant interprets the statutory phrase "circumstances unlikely to recur" (*id.* § 5-5-3.1(a)(8)) as meaning circumstances unlikely to recur *in the public at large*. It is true that if defendant's criminal conduct were the result of circumstances unlikely to recur in the public at large, there would be little occasion for deterring members of the public. In our *de novo* interpretation, however (see *People v. Smith*, 342 Ill. App. 3d 289, 293 (2003)), we understand "circumstances unlikely to recur" (730 ILCS 5/5-5-3.1(a)(8) (West 2016)) as meaning circumstances unlikely to recur *in the defendant's life*.

¶ 57        We have two reasons for this interpretation.

¶ 58        The first reason is that in statutory interpretation a word or phrase is known by the company it keeps (see *People v. Qualls*, 365 Ill. App. 3d 1015, 1020 (2006)) and the mitigating factor in question here is sandwiched between two other mitigating factors that are specific to the defendant:

> "(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime.
>
> (8) The defendant's criminal conduct was the result of circumstances unlikely to recur.

- 16 -

"(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime." 730 ILCS 5/5-5-3.1(a)(7), (8), (9) (West 2016).

Because subsections (a)(7) and (9) are specific to the defendant, it would be natural to so read subsection (a)(8). See *Qualls*, 365 Ill. App. 3d at 1020. Even if it were unlikely that defendant herself would ever again be physically blocked in and bullied by an emotionally unstable spouse, the same thing might happen to others in fraught domestic relationships. Without excusing or minimizing domestic violence that took the form of unlawful restraint, the circuit court could have reasonably seen fit to deter others, in such volatile situations, from overresponding with deadly force that was disproportionate and unnecessary. See 730 ILCS 5/5-5-3.2(a)(7) (West 2016).

¶ 59        Our other reason for interpreting "circumstances unlikely to recur" as those unlikely to recur in the defendant's life is that the appellate court has long interpreted the statutory phrase that way. *Id.* § 5-5-3.1(a)(8). Take *People v. Spinks*, 80 Ill. App. 3d 1096, 1097 (1980), for example, in which the defendant appealed his sentences for two counts of burglary. In affirming the sentences, the appellate court reasoned that burglary often was motivated by the need for money and that the evidence did not establish that this circumstance, the need for money, was unlikely to recur in the defendant's life:

"Although the defendant was seeking employment and was currently going to college, intending to complete his education, these facts do not establish that the circumstances which caused the defendant to commit the burglaries are unlikely to recur and that the defendant's attitudes have changed to such an extent that, were these circumstances to recur, he is unlikely to commit another crime." *Id.* at 1100.

¶ 60        Another example is *People v. Tross*, 281 Ill. App. 3d 146, 147-48 (1996), in which the defendant pleaded guilty to reckless homicide after drunkenly driving onto the shoulder of an

expressway and causing someone's death. In affirming the sentence in that case, the appellate court held as follows: "Evidence of alcohol problems may also be relevant to refute factors considered in mitigation. In particular, it may be relevant to refute the following mitigating factors: (1) 'the defendant's criminal conduct was the result of circumstances unlikely to recur' ***." *Id.* at 152 (quoting 730 ILCS 5/5-5-3.1(a)(8) (West 1994)). By "alcohol problems," the appellate court did not mean the incidence of alcoholism in the public at large; it meant the defendant's alcoholism.

¶ 61 So, case law appears to agree with our interpretation: "[C]ircumstances unlikely to recur" are circumstances unlikely to recur in the defendant's life, not circumstances unlikely to recur in society. 730 ILCS 5/5-5-3.1(a)(8) (West 2016). The unlikelihood that the circumstances will recur in the defendant's life do not necessarily lessen the need for deterring others.

¶ 62 D. A Defensible Balancing of the Aggravating
Factors Against the Mitigating Factors

¶ 63 It was not unreasonable of the circuit court to decide that probation would have deprecated the seriousness of the offense. Given that threshold decision, the court had to decide on a prison term that fairly accounted for the seriousness of the offense.

¶ 64 Second-degree murder could be more or less serious depending on the violence of the blow. See *Floyd*, 160 Ill. App. 3d at 87-88; *Montague*, 149 Ill. App. 3d at 347. The stab wound in this case was 4 ½ inches deep, penetrating two vital organs.

¶ 65 In addition to the degree of lethal force, the circuit court could have considered *how* unreasonable defendant's belief was in the necessity to use lethal force. See 720 ILCS 5/9-2(a)(2) (West 2016). There are degrees of unreasonableness, and that consideration likewise would fall under the heading of the seriousness of the offense.

¶ 66 When the need for deterrence is added in, we are unable to say that a prison term that is four years above the minimum prison term allowable under statutory law is arbitrary or

rationally indefensible. See 730 ILCS 5/5-4.5-30(a) (West 2016); *Ortega*, 209 Ill. 2d at 359; *Streit*, 142 Ill. 2d at 19.

¶ 67 Again, it is true that the mitigating factors in this case, especially defendant's good character, are substantial. But, arguably, they are adequately accounted for in a prison sentence that is 12 years below the maximum. See 730 ILCS 5/5-4.5-30(a) (West 2016).

¶ 68 We say "arguably" because our standard of review—looking for an abuse of discretion (see *Streit*, 142 Ill. 2d at 19)—is the most deferential standard of review recognized by the law (*People v. Radojcic*, 2013 IL 114197, ¶ 33). The sentence in this case is not an abuse of discretion. Our duty, then, is to defer to the circuit court's sentencing decision. See *Streit*, 142 Ill. 2d at 19.

¶ 69 III. CONCLUSION

¶ 70 For the foregoing reasons, we affirm the circuit court's judgment.

¶ 71 Affirmed.